[No. 12923-6-I.   Division One.   September 29, 1986.]

LARRY MILLER, *Respondent*, v. JAMES PATTERSON, ET AL, *Appellants*.

*George W. Cody* and *Cody & Hatch, Inc., P.S.,* for appellants.

*Deborah J. Clark,* for respondent.

HOLMAN, J.*—Larry Miller secured a default judgment against James Patterson in an action brought under RCW 49.52.070, seeking double damages and attorney's fees and costs for unlawful withholding of wages.[1] Patterson asserts

---

*Judge Francis E. Holman is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

[1]RCW 49.52.070 provides:
"Civil liability for double damages. Any employer and any officer, vice princi-

that the trial court erred by denying his motion to dismiss for want of prosecution under CR 41(b)(2)(A) and by entering judgment for an amount certain without proper compliance with CR 55(b). We disagree and affirm the judgment.

With respect to the first issue, the facts chronologically are as follows: the summons and complaint were filed by Miller on December 21, 1978; on March 3, 1979 Miller submitted written interrogatories to Patterson; on April 3, 1979 Patterson's attorney filed his appearance and answered the complaint by general denial; on May 17, 1979, the interrogatories not having been answered, Miller's motion to compel discovery was granted, the court awarding terms of $150; on June 15, 1979 Miller's second motion to compel discovery was granted, the court ordering the interrogatories to be answered and awarding additional terms of $150, both such amounts to be paid by June 30, 1979; Patterson appeared pro se at the June 15 hearing and his attorney filed a written notice of withdrawal; on July 6, 1979 Patterson having failed to comply with the orders compelling discovery and awarding terms, Miller moved for an order of default, which motion, notice of which had been duly served on Patterson, was granted at a hearing on July 26, 1979; the written order of default was signed by the court and filed on August 1, 1979.

There the matter rested, so far as the record shows, until January 7, 1981, when the superior court clerk sent written notice to Miller's attorney advising her that no action of record had been taken in the case in the past 12 months and that, pursuant to CR 41(b)(2), the case would be dismissed without prejudice by the court unless within 30 days

pal or agent of any employer who shall violate any of the provisions of subdivisions (1) and (2) of RCW 49.52.050 shall be liable in a civil action by the aggrieved employee or his assignee to judgment for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees: *Provided, however,* That the benefits of this section shall not be available to any employee who has knowingly submitted to such violations."

(a) action of record were made, or (b) good cause were shown, upon written or personal application to the court, why the case should be continued as a pending case.[2] As disclosed by the record, the only response generated by this notice was a typed note bearing the clerk's stamp, showing it to have been filed on February 18, 1981 (which we note to be more than 30 days after the date of the notice), reading as follows:

Tim:

Kirsten [first name of Miller's attorney] does not want this dismissed, she got an oral Order of Default against Patterson, and she wants to go in and get a judgment against him for the $6,000. She doesn't know what she has to do . . . to stop this, do you have any ideas? This has to be done by February 6, 1981.

Kathy

Miller's brief explains that the clerk, on the basis of the information contained in the above note given to the clerk by counsel appearing in person, declined to take further action. But the record is silent on this point, as well as to whether the clerk regarded it as "action of record" (because

---

[2]CR 41(b)(2) provides:

"*Dismissal on Clerk's Motion.*

"(A) Notice. In all civil cases wherein there has been no action of record during the 12 months just past, the clerk of the superior court shall mail notice to the attorneys of record that such case will be dismissed by the court for want of prosecution unless within 30 days following said mailing, action of record is made or an application in writing is made to the court and good cause shown why it should be continued as a pending case. If such application is not made or good cause is not shown, the court shall dismiss each such case without prejudice. The cost of filing such order of dismissal with the clerk shall not be assessed against either party.

"(B) Mailing notice. The notice shall be mailed in every eligible case not later than 30 days before June 15 and December 15 of each year, and all such cases shall be presented to the court by the clerk for action thereon on or before June 30 and December 31 of each year. These deadlines shall not be interpreted as a prohibition against mailing of notice and dismissal thereon as cases may become eligible for dismissal under this rule.

"(C) Applicable date. This dismissal procedure is mandatory as to all cases filed after January 1, 1959, and permissive as to all cases filed before that date. This rule is not a limitation upon any other power that the court may have to dismiss any action upon motion or otherwise."

the note was physically placed in the file, although after the expiration of the 30–day period), or "good cause shown" (because counsel had already obtained a default order and made this known to the court through the clerk's office at some time, as is indicated by the tenor of the note, prior to February 6, 1981, and thus within the 30–day period). We need not speculate on this, however, since it is undisputed that the case was not dismissed, but rather did continue alive throughout the remainder of 1981 and on into 1982. Nevertheless, we are constrained to observe that such a casual procedure on the part of clerk and counsel seeking to avoid dismissal under this rule is not recommended.

On April 27, 1982 the superior court clerk sent a similar notice under CR 41(b)(2) to Miller's attorney. In response to this second notice, the latter served and filed on May 5, 1982, a note for the trial docket. This was action of record taken well within the 30–day period specified in the notice, thereby suspending the operation of the rule. On November 19, 1982 new counsel filed his appearance on behalf of Patterson, and on January 13, 1983 moved the court to dismiss the case under CR 41(b)(2), based on the claim that Miller had failed to take appropriate action in response to the clerk's first notice of January 7, 1981. On February 1, 1983 Patterson's motion came on for hearing. Patterson claims that under CR 41(b)(2) the motion should have been granted and that, by denying it, the trial court committed error.

■ In responding to Patterson's contention, we first note that the rule itself extends no specific right to a party to move to dismiss a civil action solely on the ground of no action of record having been taken during a given 12–month period. CR 41(b)(2) reads in part as follows:

*Dismissal on Clerk's Motion.*
(A) Notice. In all civil cases wherein there has been no action of record during the 12 months just past, the clerk of the superior court shall mail notice to the attorneys of record that such case will be dismissed by the court for want of prosecution unless within 30 days following said

mailing, action of record is made or an application in writing is made to the court and good cause shown why it should be continued as a pending case. If such application is not made or good cause is not shown, the court shall dismiss each such case without prejudice. The cost of filing such order of dismissal with the clerk shall not be assessed against either party.

The purpose of this rule is to provide a relatively simple means by which the court system itself, on its own volition, may purge its files of dormant cases. *See* 4 L. Orland, Wash. Prac., *Rules Practice* § 5502, at 243 (3d ed. 1983). To warrant dismissal under this rule, three elements are prescribed:

1. The clerk must mail the required notice to the attorneys.

2. No action of record in the case during the preceding 12 months.

3. No action of record, and no showing of good cause for continuing the case, within 30 days following the notice.

When these three elements exist, the rule requires the court to dismiss the action without prejudice. But, in order for such action to occur, it is obviously necessary that the matter be brought to the court's attention through some type of communication, such as a motion. It is implicit that the appropriate person to present such motion to the court is the clerk, who is responsible to the court for knowing the state of the record and which cases are eligible for dismissal under the rule. This conclusion is confirmed by language appearing in subsection (2)(B) of the rule stating "all such cases shall be presented to the court *by the clerk* for action thereon" (italics ours), and is further supported not only by common practice under the rule but also by its heading, which, although not a part of the rule, clearly states "Dismissal on Clerk's Motion."

Patterson cites the case of *Nicholson v. Ballard,* 7 Wn. App. 230, 499 P.2d 212 (1972) as authority for the proposition that CR 41(b)(2) is mandatory, and reasons therefrom that if the court, through the clerk's office, fails to take

appropriate action under the rule, then any party aggrieved by such failure can take action under the rule. In the first place, *Nicholson* is distinguishable, since that case held only that, once a case is dismissed pursuant to CR 41(b)(2), such dismissal cannot be subsequently set aside under CR 60(b)(1) on the ground of inadvertence or excusable neglect on the part of counsel. Secondly, *Nicholson* also states that the proper remedy to enforce performance of a mandatory act is by way of mandamus.[3] Thirdly, the purpose of CR 41(b)(2) is to benefit the court system itself by providing a method by which to remove stale matters from consideration; there are other provisions within the involuntary dismissal rule, CR 41(b), to benefit and protect the interests of defendants, namely (a) the first sentence of the rule[4] which applies generally to a plaintiff's want of prosecution or noncompliance with court rules and orders, (b) paragraph (1) of the rule[5] which applies specifically to a plaintiff's failure to note for trial within 1 year after joinder of issues, and (c) paragraph (3) of the rule[6] which applies specifically

---

[3]We would agree that Patterson would have standing to bring such an action were his protectable interest adversely affected by failure of the clerk or court to carry out its mandatory duty under the rule. *See Vovos v. Grant*, 87 Wn.2d 697, 699, 555 P.2d 1343 (1976).

[4]"For failure of the plaintiff to prosecute or to comply with these rules or any order of the court, a defendant may move for dismissal of an action or of any claim against him." CR 41(b).

[5]"Any civil action shall be dismissed, without prejudice, for want of prosecution whenever the plaintiff, counterclaimant, cross claimant, or third party plaintiff neglects to note the action for trial or hearing within 1 year after any issue of law or fact has been joined, unless the failure to bring the same on for trial or hearing was caused by the party who makes the motion to dismiss. Such motion to dismiss shall come on for hearing only after 10 days' notice to the adverse party. If the case is noted for trial before the hearing on the motion, the action shall not be dismissed." CR 41(b)(1).

[6]"After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judg-

to a plaintiff's failure at a bench trial to adduce sufficient evidence to support his case. Fourthly, even if we were to allow a defendant to place himself in the shoes of the clerk and make a motion for dismissal under subsection (2) of CR 41(b), it would be manifestly unjust to allow him to do so some 2 years after such right to make the motion would have accrued and during which time numerous actions of record had been taken; here the clerk's first notice under CR 41(b)(2) was given on January 7, 1981, and Patterson's motion to dismiss was not made until January 13, 1983. For these reasons, we hold that the court correctly denied it.

The second contention asserted by Patterson is that the trial court erred by entering a default judgment in an amount certain without compliance with CR 55(b), which reads in part as follows:

**(b) Entry of Default Judgment.** As limited in rule 54(c), judgment after default may be entered as follows, if proof of service is on file as required by subsection (b)(4):

(1) *When Amount Certain.* When the claim against a party, whose default has been entered under section (a), is for a sum certain or for a sum which can by computation be made certain, the court upon motion and affidavit of the amount due shall enter judgment for that amount and costs against the party in default, . . .

(2) *When Amount Uncertain.* If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings as are deemed necessary or, when required by statute, shall have such matters resolved by a jury.

As to such contention, the facts are as follows: Based on

---

ment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subsection and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under rule 19, operates as an adjudication upon the merits." CR 41(b)(3).

the order of default entered August 1, 1979, as to which no motion to set aside or otherwise challenge had been made, and after new counsel had appeared for Patterson, Miller moved for judgment. This motion came on for hearing on February 17, 1983, after the denial of Patterson's motion to dismiss under CR 41(b)(2), hereinabove referred to, and after the denial of his motion for reconsideration. Miller's motion for judgment was supported by his affidavit as to the wages he claimed were due him for the 1977 fishing season and his counsel's affidavits as to costs and attorney fees. Based on these, the court on February 18, 1983, granted the motion and signed the order awarding judgment for $6,000 (double the amount of wages due) plus $3,113 for attorney fees and costs, which latter sum, as specifically indicated by the court's interlineation, was to include costs previously awarded in the proceeding (terms aggregating $450 having been assessed). The total judgment, therefore, was $9,113.

Miller's affidavit stated that "based upon what I witnessed under the employ of James Patterson regarding the profitability of the fishing boat 'Silver Fox' during the 1977 fishing season, it is my belief that my earnings for that year were $3,000.00."

After the judgment was entered, appeal was taken to this court on March 10, 1983. Three months later, on June 21, 1983, Patterson moved in the trial court to vacate the default judgment. The trial court on July 18, 1983, denied the motion, stating as follows:

Now for some reason which is unclear to me the matter is before the Court again, while the appeal is still vital, on what amounts to a Motion to Reconsider the previous Order denying the Motion to Reconsider a Petition to Vacate. In addition to what amounts to a Motion to Reconsider, the defendant for the first time, as far as I can see, offers to the Court an analysis which would challenge the plaintiff's allegations in the Complaint. The defendant at this point, as far as I can tell, is now for the first time telling the Court that he didn't really hire the plaintiff; that plaintiff sort of wandered in and the

defendant agreed to pay him on an 'as is' piecework basis, a few dollars here, a few dollars there, and that he had received all he had coming, and all the rest of the Complaint is not true. Well, that assertion comes some six years too late. The defendant has consistently and persistently stonewalled this case from the start. It is once again before the Court in an attempt to have this matter resolved in some way other than on the merits. Again, as far as I can see, simply stalling, trying to wear the plaintiff down by attrition. . . .

. . . As I indicated, I have seen nothing that justifies this case being sent back to Superior Court, or back here. As far as I can see, this entire exercise is inappropriate, futile, unnecessary and punishing. I will grant terms to the plaintiff in the sum of $500.

In any event, whether we are dealing with Patterson's appeal from the default judgment of February 18, 1983, or from the court's denial of the motion to set it aside on July 18, 1983, the basic thrust of Patterson's contention is the same, *i.e.*, that it was error for a default judgment to be entered in this case based on Miller's affidavit. Patterson's contention is that under CR 55(b) the entry of a default judgment is governed by CR 54(c), which does not permit judgment to exceed the amount prayed for; that a judgment based on motion and affidavit can only be given if the amount prayed for is a sum certain, or which can be made certain; that the prayer in the complaint was not for a sum certain, but for a "reasonable amount"; and that Miller's affidavit failed to show any method by which it would be determined how much he was to receive.

CR 54(c) states in part, as follows:

**Demand for Judgment.** A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment.

In response to Patterson's contention, we first look to the prayer in the complaint, which states as follows:

Wherefore, Plaintiff prays for judgment against the defendants and the marital community composed thereof, for $3,000.00, together with interest thereon from October 1977, and additionally by way of exemplary

damages, for judgment in the amount of twice the amount of wages unlawfully withheld, together with the costs of suit and reasonable Attorney's fees as provided for by RCW 49.52.070, and for such other relief as the Court may deem just and equitable under the circumstances.

Clearly, this prayer constitutes a demand for a sum certain, $3,000 doubled, as well as for a sum which by computation can be made certain, the costs and attorney fees. The judgment as entered did not exceed the amount prayed for and thus satisfies CR 54(c). Nothing in the prayer can be construed as a demand for a "reasonable amount."

■ With regard to whether Miller's affidavit was sufficient to establish the sum certain, or one which could be made certain, it is clear that he computed his earnings upon his personal witness of the ship's profitability. That hindsight might show, based on the financial records kept by Patterson, that such was not the case cannot now be asserted to deny Miller his relief. Even where an amount is uncertain, the court has considerable discretion, CR 55(b)(2) stating that "the court *may* conduct such hearings as are *deemed necessary*". (Italics ours.) There was no abuse of discretion here. The record conclusively shows that Miller, through his counsel, attempted to secure information from Patterson through the civil discovery rules in the context of a legal proceeding, by way of interrogatories and request for documents. That Patterson elected to opt out of the proceeding, by failing to comply with the rules on discovery and subsequent court orders, is clearly apparent. In such a situation, it was well within the discretion of the court to accept Miller's affidavit as a basis for a default judgment. As the court stated at the July 18, 1983 hearing:

The Affidavit is obviously a limited document. The plaintiff is in possession of limited information. The defendant was asked to supply that information over and over and over again and steadfastly refused to do so. As a consequence, the Court took the only means of establishing damages that was available to him and assumed that the defendant, since he chose not to challenge the posi-

tion of the plaintiff, was, if not in agreement with it, at least willing to accept the results of his refusal to provide specific answers to the questions concerning damages.

We do not find in the record before us the affidavit of counsel supporting the sum certain of $3,113 for costs and attorney fees. However, no challenge has been made to this figure, and we accept the court's statement in the judgment that such affidavit was provided.

■ One remaining matter is Miller's motion for attorney fees and costs on appeal. RAP 18.1(a) allows a party to recover reasonable attorney fees or expenses on appellate review, if so provided by the applicable law.[7] In this case the applicable law is RCW 49.52.070, which provides for a reasonable attorney's fee and costs in an action for the intentional withholding of wages. That this authorization includes attorney fees and costs on appeal is well established. *Brandt v. Impero,* 1 Wn. App. 678, 463 P.2d 197 (1969).

In this case, we are concerned with the attorney's time spent subsequent to the judgment of February 18, 1983. Such judgment already includes the $3,113 awarded for time spent and costs incurred prior thereto. Miller's counsel has provided an affidavit stating that she spent 126 hours on this case since the entry of the judgment below, at an hourly rate varying from $55 to $65 per hour, over a 3–year period. While such an expenditure of time might normally appear somewhat excessive for a case of this nature, we have no doubt but that a substantial amount was attributable to tactics employed by the other side. The office time records attached to the affidavit indicate a great amount of lawyer activity for varying amounts of time on various days during the period. They appear to us to be reasonable. The hourly rates charged are certainly reasonable by present day standards. These records show, as the time charged was

---

[7] "If applicable law grants to a party the right to recover reasonable attorney fees or expenses on review, the party should request the fees or expenses as provided in this rule." RAP 18.1(a).

extended out at the then applicable hourly rate, and as the disbursements were added in, a grand total of $7,940.70. However, we observe that such records show that a balance of $825 was carried forward, apparently for some of the services rendered prior to the February 18, 1983 judgment. Therefore, $825 should be deleted. We believe it reasonable to allow $150 for oral argument. With these adjustments, the attorney fees and costs for the appeal in this case are fixed and allowed in the amount of $7,265.70. This includes the $500 terms awarded by the court below at the July 18, 1983 postjudgment hearing.

The judgment is affirmed and respondent Miller is awarded $7,265.70 for attorney fees and costs on appeal.

WILLIAMS and COLEMAN, JJ., concur.