[No. 13863–4–I.   Division One.   November 24, 1986.]

SNOHOMISH COUNTY, *Appellant,* v. THORP MEATS,
ET AL, *Respondents.*

*Seth R. Dawson, Prosecuting Attorney,* and *Gordon W. Sivley, Deputy,* for appellant.

*J. Robert Leach, Nielsen, Nielsen & Leach, Michele M. Sales,* and *Oles, Morrison, Rinker, Stanislaw & Ashbaugh,* for respondents.

WILLIAMS, J.—Mr. and Mrs. Russell Thorp, through their wholly owned company, Thorp Meats, owned a parcel of land in Snohomish County fronting on a river. On July 2, 1979, they gave permission to Fiorito Brothers, Inc., to deposit on this parcel excess fill resulting from a highway construction project being constructed for the state.

On August 11, 1980, Snohomish County brought an action against Thorp Meats, seeking an injunction requiring the fill to be removed and the land restored to its previous condition. On October 28, 1980, the County joined Fiorito

Brothers as an additional defendant.

Nothing further occurred in the case until January 4, 1982, when the County moved for default on the ground that no answer had been filed. Both defendants then filed an answer and the hearing on the default motion was stricken. The case continued to be inactive until July 26, 1983, when the superior court clerk mailed a clerk's notice of dismissal, pursuant to CR 41(b)(2), stating there had been no action of record within the past 12 months and that the case would be dismissed without prejudice unless within 30 days either (a) action of record was made, or (b) written application was made showing good cause for continuing the matter as a pending case.

On August 8, 1983, the County filed a note for trial setting for August 23, 1983. Fiorito Brothers then moved for dismissal of the case under CR 41, noting such motion for a hearing the same day.

On August 23, 1983, the deputy prosecutor representing the County went to the office of the court administrator and secured a trial date of February 9, 1984. The parties then had a hearing on the motion for dismissal. The court granted the dismissal as to all parties with prejudice. The County appeals.

The issue is whether a trial court has authority to dismiss a civil action with prejudice for want of prosecution when the plaintiff fails to note the case for trial within 1 year after issues have been joined, but has noted it for trial before a hearing on a motion to dismiss. CR 41(b) provides:

**(b) Involuntary Dismissal; Effect.** For failure of the plaintiff to prosecute or to comply with these rules or any order of the court, a defendant may move for dismissal of an action or of any claim against him.

(1) *Want of Prosecution on Motion of Party.* Any civil action shall be dismissed, without prejudice, for want of prosecution whenever the plaintiff, counterclaimant, cross claimant, or third party plaintiff neglects to note the action for trial or hearing within 1 year after any issue of law or fact has been joined, unless the failure to bring the same on for trial or hearing was caused by the

party who makes the motion to dismiss. Such motion to dismiss shall come on for hearing only after 10 days' notice to the adverse party. If the case is noted for trial before the hearing on the motion, the action shall not be dismissed.

The County contends that CR 41(b)(1) applies. The action should not have been dismissed, much less with prejudice, because the County noted the case for trial before the hearing on the motion. Thorp Meats and Fiorito Brothers contend that CR 41(b)(1) does not apply, and that the court's order of dismissal was proper under its inherent power or because of the first paragraph of CR 41(b) quoted above.

Historically, the courts have had the inherent authority to dismiss an action for want of prosecution. *Langford v. Murphey,* 30 Wash. 499, 500, 70 P. 1112 (1902). This inherent power was recognized and codified in Rule for Admission to Practice 3, 193 Wash. 40–a (1938), reading:

Any civil action shall be dismissed, without prejudice, for want of prosecution whenever the plaintiff or cross–complainant shall neglect to note the action for trial or hearing within one year after any issue of law or fact has been joined, unless the failure to bring the same on for trial or hearing was caused by the party who makes the motion to dismiss. Such motion to dismiss shall come on for hearing only after notice to the adverse party.

The rule was construed in *State ex rel. Lyle v. Superior Court,* 3 Wn.2d 702, 705–06, 102 P.2d 246 (1940) as follows:

Our intention in adopting the above–quoted rule is to be deduced from what we said. We may amend or repeal that rule, but, until we do, the rule is a part of the written law of this state, which litigants are presumed to know and with which they must comply. Rules which may be deemed directory merely may be disregarded; but where, in establishing rules, the court has not reserved therein the right of exercise of discretion, those rules cannot justifiably be disregarded—there is no room for the exercise of discretion.

The *mandatory provision* of the rule *is* that any civil action shall be dismissed, without prejudice, if the plaintiff or cross–complainant fail to note the action for trial

or hearing within one year after any issue of law or fact has been joined. That provision is subject to the *qualification* "unless the failure to bring the same on for trial or hearing was caused by the party who makes the motion to dismiss." The *qualification* accentuates, places in bold relief, the mandatory provision for dismissal of the action if not noted for trial or hearing within the time specified unless the party moving dismissal caused the delay.

In 1967 the rule was amended to add the qualification, "If the case is noted for trial before the hearing on the motion, the action shall not be dismissed." CR 41(b)(1), 71 Wn.2d xci (1967). In *Gott v. Woody,* 11 Wn. App. 504, 507, 524 P.2d 452 (1974) the court said and we agree that this

revision contemplates a limitation upon the otherwise inherent discretionary power of the court to dismiss, upon the motion of a party, for failure to bring a case on for trial in a timely fashion.

Thus, where a motion for dismissal for want of prosecution is occasioned by the inaction of the plaintiff (or other party having the affirmative of an issue) in bringing the case on for trial, the trial court may not dismiss on that ground where the cause is noted for trial before the hearing on the motion.

The introductory sentence in CR 41(b) is simply that and does not alter the force of the plain language which follows.

*Reversed and remanded for trial.*

COLEMAN, J., concurs.

HOLMAN, J.* (dissenting)—I am unable to concur with the majority's view that the first unnumbered paragraph of CR 41(b) is simply an introductory sentence which is necessarily governed by the language in the following paragraph numbered (1). I must, therefore, respectfully dissent.

There are two issues on this appeal: (a) whether a trial court has the authority under CR 41(b) to dismiss for want of prosecution a civil suit with prejudice, on motion and under appropriate circumstances, even though one of those

---

*Judge Francis E. Holman is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

circumstances (failure to note for trial within 1 year after joinder of issues) would require the court to dismiss such suit without prejudice, on motion duly heard prior to noting for trial; and, if so, (b) whether the circumstances in this case were sufficient to warrant the court's dismissal with prejudice.

The majority answers the first question in the negative and therefore does not address the second question. In my view, both questions must be answered in the affirmative. Resolving the first question requires an interpretation of the first unnumbered paragraph of CR 41(b) and of its relationship, if any, to paragraph (1) of CR 41(b); on this matter the case law is relatively sparse, the Supreme Court not having yet directly addressed it. Resolving the second question requires a review of the special circumstances shown by the record in this case.

Appellant Snohomish County contends, and the majority apparently agrees, that when a defendant has answered the complaint and the plaintiff does not note the case for trial within 1 year, a defendant moving for dismissal necessarily does so under CR 41(b)(1) which reads as follows:

> (1) *Want of Prosecution on Motion of Party.* Any civil action shall be dismissed, without prejudice, for want of prosecution whenever the plaintiff, counterclaimant, cross claimant, or third party plaintiff neglects to note the action for trial or hearing within 1 year after any issue of law or fact has been joined, unless the failure to bring the same on for trial or hearing was caused by the party who makes the motion to dismiss. Such motion to dismiss shall come on for hearing only after 10 days' notice to the adverse party. If the case is noted for trial before the hearing on the motion, the action shall not be dismissed.

The County argues that in this situation dismissal without prejudice is mandatory unless (1) the moving party caused the failure to bring the case on for trial, or (2) the plaintiff notes the case for trial before the hearing on the motion to dismiss. Since it is undisputed that in this case the County obtained a trial date before the motion for dis-

missal was heard, the County contends that the court was required to deny the motion to dismiss.

On the other hand, Thorp Meats and Fiorito Brothers contend that CR 41(b)(1) does not apply here. They argue that the court's power of dismissal in this case stems either from its inherent power (based both on equitable principles and on its interest in controlling its case load in the due administration of justice), or from the first unnumbered paragraph of CR 41(b), which reads as follows:

(b) **Involuntary Dismissal; Effect.** For failure of the plaintiff to prosecute or to comply with these rules or any order of the court, a defendant may move for dismissal of an action or of any claim against him.

Both parties cite the case of *Gott v. Woody,* 11 Wn. App. 504, 524 P.2d 452 (1974) in support of their position. The trial judge also cited *Gott* in his letter to counsel dated September 9, 1983, explaining the reason he dismissed the County's action:

I dismissed this cause of action on a laches theory, based on this Court's inherent equitable power. My reading of *Gott vs Woody* 11 Wn. App. 504 (1974) indicates that the trial court's inherent discretion in this matter remains intact. . . .

In *Gott,* a civil action was commenced on October 8, 1969. Both sides engaged in discovery by taking pretrial depositions during the spring of 1970. On January 19, 1971, the plaintiff filed a demand for jury trial. The issues were joined in January 1972 when the defendant filed an appearance and answer. Approximately 8 months later, the defendant moved for dismissal for want of prosecution. A few days later the plaintiff noted the case for trial setting. When the defendant's motion for dismissal was heard approximately 10½ months after joinder of the issues, the trial court granted the motion based on its inherent power to dismiss cases for dilatoriness of prosecution.

On appeal, the order of dismissal was reversed. The Court of Appeals, Division Two, held that the discretionary authority of the trial court to dismiss on the ground of want

of prosecution was limited by CR 41(b)(1), and therefore, the dismissal could not be granted if the case were noted for trial before the hearing on the motion, whether or not 1 year had elapsed since the issues were joined. The court recognized the inherent discretionary power of the superior court to dismiss actions not diligently prosecuted, but held that such power was limited by the last sentence of CR 41(b)(1) which states: "If the case is noted for trial before the hearing on the motion, the action shall not be dismissed." In its opinion, the court relied upon the following statement of the Supreme Court in *State ex rel. Dawson v. Superior Court*, 16 Wn.2d 300, 304, 133 P.2d 285 (1943):

> A court of general jurisdiction has the inherent power to dismiss pending actions if they are not diligently prosecuted, and it is its duty to do so in the orderly administration of justice. The dismissal of an action for want of prosecution, *in the absence of statute or rule of court creating the power and guiding its action, is in the discretion of the court.*

(Italics mine.)

I believe *Gott* is distinguishable from this case. In *Gott*, the noting for trial took place only 8 months after joinder of issues; here the noting for trial occurred approximately 19 months after such joinder and only after the clerk's notice of potential dismissal under CR 41(b)(2) had been received by the County. Furthermore, in *Gott*, the plaintiff had taken some action toward moving along with the case by engaging in discovery in 1970 and in making demand for jury trial in 1971; in contrast, the record in this case shows that the only actions taken by the County between October 28, 1980, and August 8, 1983, were a motion for default to stimulate answers by the defendants and two routine notices of substitution of prosecutors.

The chief distinction between the two cases, however, is this: in *Gott*, the only ground adduced in support of the motion to dismiss was the 8–month delay in noting the case for trial setting after joinder of issues; in the instant case, the comparable delay of 19 months between joinder and

noting for trial setting must be viewed in context with the prejoinder periods[1] of practically zero prosecutorial activity on the part of the County. During this period prior to joinder, the land in question had already been graded, planted, and put to beneficial community use. Thus, the defendant in *Gott* could only raise an issue of the type described in CR 41(b)(1), not subject to the exercise of discretion, whereas in the instant case, the equities involved are of a nature typically subject to the court's discretion.

Like the *Gott* court, I look for guidance to the Supreme Court's opinion in *State ex rel. Dawson v. Superior Court, supra.* In that case, a husband filed a divorce action against his wife; 2 months thereafter the wife obtained an order awarding her temporary alimony, suit money, and attorney's fees, and providing that all further proceedings in the case be stayed pending payment of the sums awarded. The husband made no payments, claiming financial inability. The wife made numerous motions to dismiss the action for want of prosecution, none of which were granted. Finally, more than 3 years after the action was filed, the wife filed another motion to dismiss based upon rule 3 of the Rules of Pleading, Practice, and Procedure.[2] The trial court again denied the motion to dismiss, and the case was reviewed by the Supreme Court.

The Supreme Court held that RPPP 3 had no application to the case since the wife, having sought and obtained an order staying proceedings on failure to pay temporary alimony and other sums, could not meet the rule's condition that the failure to bring to trial must not be caused by the party moving to dismiss. The court reversed the trial court's denial of the motion, however, concluding that the action should have been dismissed based on the inherent

---

[1]Approximately 17 months for Thorp Meats and 14 months for Fiorito Brothers.

[2]RPPP 3, a predecessor of the present CR 41(b)(1), is substantially the same as the present rule except that it does not contain the language denying a dismissal if the case is noted for trial before the hearing on the motion to dismiss.

power of the trial court.

I believe it to be a fair reading of the opinion in *Dawson* that the Supreme Court necessarily concluded that the trial court either failed to exercise the discretion required under its inherent power to dismiss or abused such discretion in denying the motion for dismissal. The *Dawson* court stated:

> The plaintiff in the divorce action in Kittitas county is not entitled to have that action pend and remain in abeyance indefinitely merely because he is unable to comply with the order of the court requiring him to pay temporary alimony and suit money to the relator, even though the action of the plaintiff has been stayed by an order of the court until the order for temporary alimony and suit money has been complied with. This cannot adversely affect the relator for an unreasonable length of time. It may be that the amount of temporary alimony now owing is greater than the plaintiff can pay, but he has always had the right to apply to the court for relief if he could not comply with the order. The plaintiff has been content to plead inability to comply with the order of the court and rely upon the stay order as an excuse for not prosecuting his action. He has made serious charges against his wife, and she should no longer be embarrassed by the pendency of the action. The action should be dismissed.

*Dawson*, at 305.

I would hold that the power of a trial court to dismiss a pending action for want of prosecution, as sanctioned in *Dawson*,[3] is separate and distinct from the power of a court to dismiss a pending case solely on the ground that 1 year has elapsed since joinder of issues without noting for trial. The first type of power is inherent in a court of general jurisdiction and exists whether or not embodied in a court rule or statute; the second type arises because it has been specifically granted, in this case by CR 41(b)(1) and its predecessors. If the court appropriately exercises its inherent power, the action is dismissed with prejudice, and the

---

[3]It may be noted that *Dawson* was decided subsequent to *State ex rel. Lyle v. Superior Court*, 3 Wn.2d 702, 102 P.2d 246 (1940), a case relied upon by the majority.

claim on which it is based is thereafter barred; if the court exercises its power under CR 41(b)(1), the dismissal is without prejudice, and the underlying claim remains alive, subject, of course, to other defenses. If the case is appropriate for the exercise of the court's inherent power, there is nothing a plaintiff can do to avoid the consequences of his dilatoriness; in comparison, if the case involves the court's power to dismiss as provided in CR 41(b)(1), a plaintiff is afforded an escape hatch because he can avoid dismissal by noting the action for trial before the hearing on the motion to dismiss. Finally, the court's inherent power must be exercised with judicial discretion, necessarily requiring that the trial court and any reviewing court consider not only the state of the record but also, under recognized equitable principles, the facts established outside the record; in contrast, the court's power under CR 41(b)(1) is mandatory and based solely on the record.

My conclusion that the two powers are separate and distinct is based not only on the Supreme Court's opinion in *Dawson,* but also upon a consideration of the logical pattern of CR 41. The rule is concerned with, indeed is entitled, "Dismissal of Actions". When attention is focused on CR 41(b), entitled "Involuntary Dismissal; Effect", it may be immediately noticed that it begins with one unnumbered paragraph reading as follows: "For failure of the plaintiff to prosecute or to comply with these rules or any order of the court, a defendant may move for dismissal of an action or of any claim against him." This initial paragraph is followed by three numbered paragraphs, each of which deals with a specific situation. Paragraph (1) deals solely with the lapse of time, *i.e.,* whether 1 year has elapsed since joinder of issues without noting the action for hearing or trial. Paragraph (2) deals with the situation where no action of record has been made by any party during a 1–year period. Paragraph (3) deals with the power of a court, in a nonjury trial, to grant a dismissal at the close of the plaintiff's case when the plaintiff fails to show any right to relief.

The question then arises, should paragraphs (1), (2), and

(3) be construed as subordinate to the language of the first unnumbered paragraph, thereby limiting, expanding, or explaining it in further detail?

Obviously, paragraph (3) cannot be so construed, since a plaintiff's failure at a bench trial to prove his case has nothing whatever to do with a plaintiff's failure to prosecute or to comply with court rules and orders. Likewise, paragraph (2) must be read independently of the unnumbered paragraph because it is concerned with lack of recorded action by any and all parties to a case, and not solely with a plaintiff's failure to act. I believe that to preserve the logical symmetry of the rule, paragraph (1) must also be deemed to be an independent provision.[4] I therefore conclude that the words appearing in the unnumbered paragraph "failure of the plaintiff to prosecute" are intended as a recognition, by formally adopted court rule, of the inherent power to dismiss described by the Supreme Court in *Dawson.*

To take the opposite view, by construing together paragraph (1) and the unnumbered paragraph, as apparently was done in *Gott,* makes the "failure to prosecute" language in the unnumbered paragraph meaningless.

My view of this matter also finds support in the following comment by Dean Orland:

> CR 41(b) provides in its initial paragraph that the defendant may move for dismissal for failure of the plaintiff to prosecute or to comply with "these" rules or any order of the court. Although the arrangement of the Rule is such that it might be taken that the first paragraph is merely a generalization of, and controlled by, the specific provisions which follow on, such a reading does not appear to be justified; the first paragraph should be considered as having independent effect.

---

[4]This view is consistent with our holding in the recent case of *Miller v. Patterson,* 45 Wn. App. 450, 725 P.2d 1016 (1986), concerning the application of CR 41(b)(2), the dismissal on clerk's motion. We noted that there were three other provisions for involuntary dismissals under CR 41(b); namely, the first sentence of the rule (which is the unnumbered paragraph), as well as numbered paragraphs (1) and (3).

4 L. Orland, Wash. Prac. § 5502, at 241 (3d ed. 1983).

I would therefore hold that the trial court in this case had the power, both inherently and by virtue of the first unnumbered paragraph of CR 41(b), to dismiss the instant action on defendant's motion.

The second question before us is whether such power was appropriately exercised here. The trial court made no formal findings of fact or conclusions of law. However, it is clear from the court's letter denying the County's motion for reconsideration that the court exercised its inherent power on the equitable principle of laches. Because we have before us the same record of proceedings and the same uncontroverted and unchallenged affidavit regarding the facts not of record that was before the trial court, we are in a position to review the court's exercise of discretion. This affidavit stated in part:

> Following the placement of this fill upon the subject property, Fiorito Brothers, Inc. caused it to be graded in 1980. The Thorps then employed one John Misich, now deceased, to seed the property with grass. They also caused trees to be planted on the subject property.
>
> The Thorps then leased this property to a nonprofit organization known as Eagle Lee. The rent under this lease is an amount equal to the real property taxes assessed against the property. Eagle Lee in turn makes this property available to any organization wishing to use it for recreational purposes. Eagle Lee collects a nominal fee for the use of this property to defer the cost of mowing the lawn, maintaining the property and maintaining portable waste disposal facilities. This property is in use virtually every Saturday and Sunday from June 1 to September 15 each year. During the last year the organizations which have used this property have included the Everett VFW, the Snohomish, Everett, Lynnwood and Issaquah Eagles, the Snohomish American Legion, Club 170 of Everett (naval reservists) and various groups of Snohomish County employees.
>
> Except for obtaining payment of the real property taxes on the property, the Thorps derive no economic benefit from making this riverside private park available to the public for recreational purposes. Likewise, the

Thorps derived no economic benefit from permitting Fiorito Brothers, Inc. to deposit fill on this property. Permitting the county to seek at this late date the injunctive relief requested in its complaint will deprive the citizens of Snohomish County of a desirable waterfront recreational facility maintained at no cost to the taxpayers of the county. Simply maintaining a defense to this action will work a substantial economic and emotional hardship upon an elderly couple who simply attempted to be good citizens in their own community. Laches, broadly speaking, means the neglect to do a thing

at the proper time; it is the undue delay in asserting and thereafter maintaining a right. As stated in *Arnold v. Melani*, 75 Wn.2d 143, 147–48, 437 P.2d 908, 449 P.2d 800, 450 P.2d 815 (1968):

> Laches . . . is an equitable principle that in a general sense relates to neglect for an unreasonable length of time, under circumstances permitting diligence, to do what in law should have been done. It also requires an intervening change of condition, making it inequitable to enforce the claim. The doctrine is also derived from the familiar maxim that equity aids the vigilant, not those who slumber on their rights.

(Citations omitted.) When a defendant pleads laches as an affirmative defense in an answer to a complaint seeking an injunction, the laches must necessarily have occurred prior to commencement of the action, since the answer addresses the time period up to the date of the complaint. There are times, however, when slumbering on one's rights after commencement of an action in equity may also be the basis for application of the doctrine of laches. This case presents such an instance.

I would therefore affirm the trial court.

Review granted by Supreme Court March 3, 1987.