# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| WILLIAM P. NELSON, | No. 56934-5-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| HOUSTON WADE, | |
| Appellant. | |

CHE, J. — Houston Wade appeals the trial court's entry of default, the subsequent default judgment, and the denial of his motion to set aside the default judgment. Wade, on his blog,[1] alleged that William Nelson engaged in multiple acts of criminal conduct. Nelson brought a defamation lawsuit against Wade. The trial court found Wade engaged in several discovery violations.

Nelson moved for an entry of default under CR 37(b)(2)(C) and Wade responded. The trial court granted Nelson's motion for an entry of default. Over a year later, Nelson moved for default judgment and attached a certificate of service. Wade did not respond. The trial court granted default judgment. Wade moved to set aside that judgment based on improper service twice, which the trial court denied both times.

---

[1] "Blog" is commonly defined as "a website that contains online personal reflections, comments, and often hyperlinks, videos, and photographs provided by the writer." *Blog*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/blog (last visited May 23, 2023).

We hold the trial court (1) did not abuse its discretion by making an entry of default under CR 37(b)(2)(C) against Wade for his failure to comply with a discovery order, (2) did not err in declining to set aside default judgment based on due process, (3) did not abuse its discretion by declining to set aside the default judgment based on improper service, and (4) did not err by not automatically dismissing Nelson's action under CR 41(b)(2) for failure to prosecute. Thus, we affirm.

FACTS

Nelson has lived and worked on Bainbridge Island for over 62 years. Nelson has owned and operated a contracting business there since 1987. In October 2018, Wade published several allegations relating to Nelson: (1) Nelson raped a woman and attempted a coverup with the local police, (2) one of Nelson's alleged victims committed suicide due to the alleged rape, (3) Nelson engaged in rape and child abuse in cooperation with the local police and fire departments that the FBI was investigating, (4) Nelson conspired with local police to cover up the child sex ring he was running, among other alleged crimes, (5) Nelson committed domestic violence against his former spouse and his stepchildren, (6) Nelson used cocaine, and (7) Nelson stalked and tried to kill Wade several times.

According to Nelson, Wade's allegations damaged Nelson's reputation and caused him significant emotional distress and loss of income. In November 2018, Nelson brought a defamation lawsuit against Wade.

In March 2019, Nelson sent Wade interrogatories and production requests. Among other things, Nelson requested Wade to "[i]dentify any Person whom you believe you may call as a witness in this case." Clerk's Papers (CP) at 178. The request provided, "'identify' when used

in reference to an individual person means to state his full name, present address, and telephone number, if known; his present position, and business affiliation." CP at 176.

The trial court found Wade's responses were nonresponsive, combative, and insulting. Wade agreed to provide supplemental documents by May 23 at a CR 26(i) conference.[2] But Wade did not do so. Nelson moved to compel the requested documents.

At the hearing on that motion, Wade provided additional documents and the hearing was continued. Nelson found the documents insufficient and, on June 28, the trial court ordered Wade to provide complete responses to the interrogatories and provide the requested documents by July 12.[3] The trial court ordered Wade to pay $3,000 in attorney fees to Nelson as a sanction. Wade did not pay the sanction. Wade attempted but failed to comply with the aforementioned discovery obligations on July 17.

Another CR 26(i) conference was scheduled for August, and Wade attempted to provide additional discovery responses but again failed to adequately respond. While discovery was ongoing, Wade continued to post about Nelson and the pending litigation on a social media account. In Wade's October deposition, he said a deputy prosecuting attorney indicated she was likely going to charge Nelson with a felony if he continued pursuing the defamation lawsuit

---

[2] CR 26(i) requires parties to confer on discovery matters before the trial court will entertain a motion or objection on such matters. CR 26(i) is intended "to minimize the use of judicial resources during discovery and to encourage professional courtesy between counsel." *Amy v. Kmart of Wash. LLC*, 153 Wn. App. 846, 853, 223 P.3d 1247 (2009).

[3] In May 2019, Wade filed a notice that Nelson had been tampering with Wade's potential witnesses. In January 2020, Wade filed a declaration regarding additional alleged witness tampering.

No. 56934-5-II

against Wade. That deputy prosecuting attorney subsequently submitted a declaration denying that allegation.

In the same deposition, Wade admitted to not attempting to obtain the contact information of at least 17 of his 41 witnesses in violation of the June 28 trial court order. Wade also provided the names of previously undisclosed witnesses, but lacked their contact information. Ultimately, Wade provided the address of only one witness. In January 2020, Nelson moved for an entry of default. Wade appeared at the January 17, 2020 entry of default hearing. The trial court found that as of January 17, 2020, "[Wade] has failed to make a reasonable attempt to provide adequate responses to [Nelson's] requests [for interrogatories and production]." CP at 29.

In its order, the trial court explicitly determined that Wade's discovery violations were willful, that such violations substantially prejudiced Nelson's ability to adequately prepare for trial, and that anything less than a default judgment would not motivate Wade to comply with the discovery orders. To that end, the trial court reasoned that less severe contempt orders would be useless because

> prior contempt sanctions, allowing for additional time to comply, as well as providing a monetary incentive to comply, have not motivated Defendant to comply with the Defendant's discovery obligations, or demonstrated a willingness to comply with court orders. Furthermore, Defendant's willingness to knowingly lie under oath at deposition demonstrates a complete disregard to the legal process and the administration of justice. There is no alternative for this Court than to Grant Plaintiff's motion for default and strike Defendant's responsive pleadings.

CP at 32. On April 6, 2020, the trial court entered default against Wade.

On September 10, 2021, Nelson moved for default judgment, seeking to determine the appropriate remedy. Nelson filed a certificate of service showing that the default judgment

4

motion and notice for the related hearing were mailed to Wade's address of record, and those filings were not returned as undeliverable. On September 27, the trial court entered default judgment, determining that the publications were defamatory per se, awarding Nelson $500,000 in damages, and granting injunctive relief. Wade did not appear at the hearing.

Wade alleged that he did not receive notice of the default judgment hearing. Rather, Wade alleged that he discovered, in February 2022, that his bank account had been drained due to garnishment. That month, Wade moved to set aside the default judgment as (1) Wade asserted that he did not receive service for anything filed from January 2020 onwards and (2) the case should have been dismissed by the clerk under CR 41 for inactivity. To that end, Wade asserted that no filings had been delivered to his address of record, a restaurant located on Bainbridge Island. In affidavits, the general manager and executive chef at the restaurant asserted that no filings had been delivered there from May 2021 to February 2022.

Nelson provided the affidavit of the process server who maintained that she mailed notice of the default judgment proceedings to Wade's address of record and that the mailing was not returned as undelivered. At the hearing on Wade's motion, Nelson emphasized that there is no evidence about how mail is handled at the restaurant. The trial court reasoned that Wade had not met his burden to disprove proper service and denied the motion.

In April 2022, Wade again moved to set aside the default judgment due to improper service. Wade also moved to dismiss the case due to an intentional violation of due process. In this motion, Wade asserted that Nelson sent the garnishment and another mailing to Wade's mother's address, not the restaurant. Wade attached two mailings sent to Wade's mother's address from Nelson's counsel. The two mailings appear to have been sent in February 2022.

5

One of Nelson's attorneys submitted a declaration alleging that an asset search related to judgment collection found that Wade's last known address was his mother's address. And so, the attorney sent filings there associated with garnishment. After Wade filed his first motion claiming improper service, the attorney began sending mailings to the restaurant. On May 6, the trial court again denied Wade's motion.

Wade appeals the trial court's grant of Nelson's motion for entry of default, the default judgment, and the order denying Wade's motion to set aside default judgment under CR 60(b).

## ANALYSIS

### I. ENTRY OF DEFAULT FOR DISCOVERY VIOLATIONS

Wade argues that the trial court erred in granting Nelson's motion for an entry of default because (1) Nelson engaged in witness tampering and (2) Wade did not err in failing to adequately respond to interrogatories about his witnesses as the interrogatories only required disclosure "'if known.'"[4] Br. of Appellant at 13. We disagree.

The trial court's factual findings are reviewed for substantial evidence. *J.K. v. Bellevue Sch. Dist. No. 405*, 20 Wn. App. 2d 291, 302, 500 P.3d 138 (2021). "'Substantial evidence is the

---

[4] Wade submitted Nelson's first set of interrogatories and production requests as an appendix to his appellant brief. Nelson argues that we should strike this section of the appendix because those documents are not in the record on appeal. We reject this argument because the aforementioned discovery request is already in the record on appeal.

Nelson also asks us to strike Wade's statement of the case as it lacks references to relevant parts of the record. RAP 10.3(a)(5) requires, "A fair statement of the facts and procedure relevant to the issues presented for review, without argument. Reference to the record must be included for each factual statement." The great majority of Wade's statement of the case contains no citation to the record. Wade's failure to follow our rules makes it impossible for us to assess the veracity of his factual statements; however, because we recognize our rules should "be liberally interpreted to promote justice and facilitate the decision of cases on the merits," we decline to strike Wade's statement of the case. RAP 1.2(a).

quantum of evidence sufficient to persuade a rational fair-minded person the premise is true.'" *Id*. at 303 (internal quotation marks omitted) (quoting *Hoover v. Warner*, 189 Wn. App. 509, 520, 358 P.3d 1174 (2015)). And unchallenged factual findings are verities on appeal. *State v. Grocery Mfrs. Ass'n*, 198 Wn.2d 888, 901, 502 P.3d 806 (2022). We review the trial court's sanction decision based on discovery violations for an abuse of discretion. *J.K.*, 20 Wn. App. 2d at 303. Such abuse occurs when the trial court makes its decision based on untenable reasons or grounds. *Id*. Here, the trial court granted the entry of default under CR 37.

Under CR 37(b)(2)(C), the trial court may enter default judgment against a party who fails to comply with a discovery order. To impose the harsh remedy of a default judgment, the trial court must determine on the record that the following three factors are met: "'(1) the discovery violation was willful or deliberate, (2) the violation substantially prejudiced the opponent's ability to prepare for trial, and (3) the court explicitly considered less severe sanctions.'" *J.K.*, 20 Wn. App. 2d at 315 (quoting *Teter v. Deck*, 174 Wn.2d 207, 216-17, 274 P.3d 336 (2012)).

Where a party disregards a discovery order without providing a reasonable excuse or justification, our Supreme Court has held such disregard is willful. *Magaña v. Hyundai Motor Am.*, 167 Wn.2d 570, 584, 220 P.3d 191 (2009). Subsequently, our Supreme Court noted that "[s]omething more" than a mere violation of a court order is needed to support a willfulness finding. *Jones v. City of Seattle*, 179 Wn.2d 322, 345, 314 P.3d 380 (2013). As to considering lesser sanctions, "[a] trial court should impose the 'least severe sanction that will be adequate to serve the purpose of the particular sanction.'" *J.K.*, 20 Wn. App. 2d at 321 (internal quotation

marks omitted) (quoting *Magaña*, 167 Wn.2d at 590). But sanctions should not be so negligible as to undermine discovery. *Id*.

Here, the trial court was within its discretion to make an entry of default against Wade. Wade failed to challenge any factual findings. So, the trial court's findings of fact in its ruling granting default are verities on appeal. The trial court determined on the record that Wade's discovery violations were willful, that such violations substantially prejudiced Nelson's ability to adequately prepare for trial, and that anything less than a default judgment would not motivate Wade to comply with the discovery orders.

And the findings support all of the aforementioned determinations. As to willfulness, the following facts are verities: (1) plaintiff's first discovery responses "were non-responsive, combative and, in some instances, insulting," (2) Wade failed to comply with a CR 26(i) agreed deadline to supplement his responses, (3) Wade subsequently failed to comply with a court order to that end, (4) Wade failed to pay $3,000 sanctions for his discovery violation, (5) Wade admitted to not attempting to obtain the contact information of his witnesses, despite the court order requiring him to do so, (6) Wade "has not done the bare minimum of providing contact information for his own witnesses," (7) Wade lied under oath in a deposition, and (8) Wade "failed to make a reasonable attempt to provide adequate responses" to Nelson's discovery requests. CP at 27-29.

While Wade appears to maintain that he did not inadequately respond to Nelson's discovery requests because they require witness identification "if known," the trial court's factual findings that Wade, in fact, violated its order and failed to adequately respond are verities

8

on appeal. The aforementioned evidence is certainly "something more" than a mere discovery

order violation. Such evidence shows that Wade's discovery violations were willful.

As to prejudice, Wade had over 40 witnesses. Wade provided the address of only one

witness and no phone numbers. Wade admitted to not attempting to gather the "contact

information of at least 17 of his 41 witnesses." CP at 30. By depriving Nelson of basic witness

information, as well as other production requests, Wade substantially prejudiced Nelson's ability

to prepare for trial.

As to lesser sanctions, the trial court determined additional contempt orders would be

useless because

> prior contempt sanctions, allowing for additional time to comply, as well as
> providing a monetary incentive to comply, have not motivated Defendant to comply
> with the Defendant's discovery obligations, or demonstrated a willingness to
> comply with court orders. Furthermore, Defendant's willingness to knowingly lie
> under oath at deposition demonstrates a complete disregard to the legal process and
> the administration of justice. There is no alternative for this Court than to Grant
> Plaintiff's motion for default and strike Defendant's responsive pleadings.

CP at 32. The trial court also determined that restricting Wade's potential witness would not be

an appropriate sanction because such a restriction would deny Wade the evidence he needs to put

on his defense.

In evaluating the restriction of witnesses, the court noted that it "understands that [Wade]

does not have contact information for most, if not all, of his potential witnesses, only because he

has not demonstrated any reasonable effort to get that contact information." CP at 31-32. Given

the trial court's consideration of less severe sanctions and their shortcomings as well as Wade's

repeated and flagrant discovery violations, the trial court's conclusion that lesser sanctions would

not have been useful is not untenable.

Wade also contends that the trial court erred in granting Nelson's motion for default because Wade submitted allegations of witness tampering. The record does not contain evidence of a hearing, ruling, or any court discussion related to the witness tampering allegation. Wade cites no authority to support the contention that a trial court may not enter default against a party who submitted evidence alleging witness tampering. RAP 10.3(a)(6); *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) (where a party fails to find authority to support their proposition, we are not are required to search out supporting authority). We decline to reach the merits of this argument.

We hold that the trial court did not abuse its discretion by granting Nelson's motion for an entry of default.

## II. SETTING ASIDE DEFAULT JUDGMENT

Wade appears to argue that the trial court erred in not setting aside the default judgment because (1) he did not receive notice of the motion for default judgment and the related hearing—in violation of due process, (2) the service issues also warrant setting aside the judgment under CR 60, and (3) based on his analysis of the *Eitel*[5] factors  We disagree.

### A.    *Due Process*

In the default judgment context, "[d]ue process is satisfied . . . if, before entering a default judgment or dismissing a claim or defense, the trial court concludes that there was 'a willful or deliberate refusal to obey a discovery order, which refusal substantially prejudices the opponent's ability to prepare for trial.'" *Smith v. Behr Process Corp.*, 113 Wn. App. 306, 330,

---

[5] *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986) (listing the factors trial courts should consider before entering default judgment under Fed. R. Civ. P. 55).  We decline to consider this argument because these factors relate to default judgment in federal courts—not state courts.

54 P.3d 665 (2002) (internal quotation marks omitted) (quoting *White v. Kent Med. Ctr., Inc., P.S.*, 61 Wn. App. 163, 176, 810 P.2d 4 (1991)). "Under most circumstances, notice sent by ordinary mail satisfies due process because it is deemed reasonably calculated to inform interested parties of an impending action." *Wash. Fed. Sav. v. Klein*, 177 Wn. App. 22, 28, 311 P.3d 53 (2013).

Here, Wade's argument that service in this case violates due process fails because the trial court determined that Wade willfully refused to obey a discovery order and that refusal substantially prejudiced Nelson's ability to prepare for trial in its entry of default order, and moreover, the notice of the proceedings was sent by mail.

B.      *CR 60(b)*

Wade provides cursory references to CR 60(b)(1), as well as CR 60(a) and CR 60(b)(4) in his appellate brief. In a latter portion of his brief, Wade argues, without citation to authority, service irregularities are a form of excusable neglect, which merits setting aside default judgment. Wade does not analyze the appropriate CR 60(b)(1) factors. Nor does Wade provide authority regarding improper service.

Default judgment may be set aside under CR 60(b). CR 55(c)(1). CR 60(b)(1) provides that superior courts may relieve a party from a final judgment based on "[m]istakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order." We review the trial court's decision to vacate a default judgment for an abuse of discretion. *Ha v. Signal Elec., Inc.*, 182 Wn. App. 436, 449, 332 P.3d 991 (2014). Default judgments are not favored in Washington. *Id*. at 446.

11

> A party moving to vacate under CR 60(b)(1) must show that (1) there is substantial evidence supporting a prima facie defense, (2) the failure to timely appear and answer was due to mistake, inadvertence, surprise, or excusable neglect, (3) the defendant acted with due diligence after notice of the default judgment, and (4) the plaintiff will not suffer a substantial hardship if the default judgment is vacated.

*Id.* at 448-49. The preceding factors do not constitute a mechanical test; the first two factors are the primary elements the movant must show, while the second two factors are less dispositive. *Id.*

    i. *Mistake or Excusable Neglect*

CR 5(a) generally requires service of pleadings. CR 5(a) does, however, provide, "No service need be made on parties in default for failure to appear." "A party who has appeared in an action is entitled to notice of a default judgment hearing and, if no notice is received, is generally entitled to have judgment set aside without further inquiry." *Morin v. Burris*, 160 Wn.2d 745, 754, 161 P.3d 956 (2007).

The notice requirement generally applies to the entry of default proceeding, not to the later default judgment proceeding. CR 55(a)(3); *Conner v. Universal Utils.*, 105 Wn.2d 168, 172, 712 P.2d 849 (1986); *Pedersen v. Klinkert*, 56 Wn.2d 313, 319-20, 352 P.2d 1025 (1960). Generally, once the trial court makes an entry of default, the defaulting defendant is not entitled to notice of the default judgment hearing. *Conner*, 105 Wn.2d at 172. However, *Conner* involved default judgment for failure to appear or answer under CR 55, not default judgment due to discovery order violations under CR 37(b).

Wade appeared in this action, and so, he was entitled to notice of the hearing for entry of default. It is uncontested that Wade received notice of the hearing for the entry of default. Indeed, Wade responded opposing the motion for default. And Wade appeared at the entry of

default hearing. So, he cannot challenge the underlying entry of default proceeding based on service grounds.

As to notice of the default judgment hearing, Wade was in default for discovery violations, not for a failure to appear. So, CR 5 appears to require service of the default judgment proceedings on Wade. And Nelson conceded below that Wade was entitled to notice of the default judgment proceedings in this case. Thus, we assume, without deciding, that Wade was entitled to notice of the default judgment proceedings in this case.

The plaintiff bears the initial burden to establish a prima facie case of proper service when the defendant challenges service of process. *In re Dependency of G.M.W.*, 24 Wn. App. 2d 96, 117, 519 P.3d 272 (2022), *review denied*, 1 Wn.3d 1005 (2023). The plaintiff may meet that burden by providing a service declaration—regular in form and substance—from the process server. *Id*. at 117-18. We presume that a facially correct service declaration is valid. *Woodruff v. Spence*, 88 Wn. App. 565, 571, 945 P.2d 745 (1997).

Then, the burden shifts to the defendant to show clear and convincing evidence of improper service. *G.M.W.*, 24 Wn. App. 2d at 118. Evidence is clear and convincing when it shows that the ultimate facts are "'highly probable.'" *Id*. (quoting *In re Parental Rights to K.M.M.*, 186 Wn.2d 466, 478, 379 P.3d 75 (2016)).

The trial court may abuse its discretion by failing to hold an evidentiary hearing with live testimony to evaluate witness credibility when the challenge to an affidavit of service is supported by controverting affidavits as it presents an issue of fact. *Woodruff*, 76 Wn. App. at 210. However, Division One held that where a party challenging service did not appear at either of his motions to vacate default judgment, did not request a hearing to present live testimony, or

object to the trial court deciding the issue upon affidavits, the party waived the evidentiary

hearing issue and the court may determine the matter on the affidavits. *Leen v. Demopolis*, 62

Wn. App. 473, 478-79, 815 P.2d 269 (1991).

Because Wade made no request to present live testimony and did not timely object to the

trial court deciding the issue upon the affidavits, Wade waived any argument that the trial court

had to decide the issue in an evidentiary hearing. Thus, the issue is whether Wade showed

improper service by clear and convincing evidence based upon the affidavits.

Here, Nelson met his initial burden to show service was proper by submitting the service

declaration—regular in form and substance—alleging that the motion for default judgment and

notice of the related hearing were served at Wade's address for service of process, the restaurant.

Wade presented (1) his own affidavit and affidavits from the general manager and executive chef

at his address of record asserting that no filings had been delivered there from May 2021 to

February 2022, and (2) Wade attached two mailings from Kitsap Law Group that were sent to

Wade's mother's house. The two filings sent to Wade's mother's house are associated with

garnishments—not the underlying default judgment. So, the mailings sent to Wade's mother's

house are not determinative on this issue.

The declarations from Wade, the executive chef, and the general manager are not

sufficient to show improper service was "highly probable" in light of Nelson's service

declaration to the contrary, which we presume is valid. Those affidavits do not establish who

received mail at the address of record or more generally how mail is processed there or provide

indicia that U.S. mail was handled at the restaurant in a manner indicating reliable processes

were followed to effectuate service during that time period. They merely maintain that no filings

14

were received there in the relevant time period at Wade's service address. Consequently, Wade failed to show improper service by clear and convincing evidence.

As Wade cannot show improper service by clear and convincing evidence—his primary basis for setting aside the default judgment under CR 60(b)(1)—we hold that the trial court did not abuse its discretion by declining to aside its default judgment.

### III. AUTOMATIC DISMISSAL UNDER CR 41

Neither party appeared to have filed anything from April 6, 2020 to May 24, 2021. Wade argues that the superior court clerk should have automatically dismissed this matter under CR 41(b)(2) due to the lapse in filings. We disagree.

CR 41(b)(2)(A) provides,

> In all civil cases in which no action of record has occurred during the previous 12 months, the clerk of the superior court shall notify the attorneys of record by mail that the court will dismiss the case for want of prosecution unless, within 30 days following the mailing of such notice, a party takes action of record or files a status report with the court indicating the reason for inactivity and projecting future activity and a case completion date.

CR 41(b)(2) allows the superior court to sua sponte purge dormant cases from its files. *Miller v. Patterson*, 45 Wn. App. 450, 455, 725 P.2d 1016 (1986). Only the clerk may make the motion to dismiss the case under CR 41(b)(2)—not a party. *Id.* A CR 41(b)(2) dismissal is mandatory only when the following conditions are met:

> 1. The clerk must mail the required notice to the attorneys.
> 2. No action of record in the case during the preceding 12 months.
> 3. No action of record, and no showing of good cause for continuing the case, within 30 days following the notice.

*Vaughn v. Chung*, 119 Wn.2d 273, 278, 830 P.2d 668 (1992) (quoting *Kirschner v. Worden Orchard Corp.*, 48 Wn. App. 506, 509, 739 P.2d 119 (1987).

15

No. 56934-5-II

Here, the clerk did not make a CR 41(b)(2) motion to dismiss the case. The clerk is not a party to the litigation. And the clerk did not mail the required notice to the attorneys, so dismissal was not mandatory in this case.

CONCLUSION

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Veljacic, A.C.J.

Price, J.