# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

TRINITY UNIVERSAL INSURANCE
COMPANY OF KANSAS,

              Respondent,

        v.

OHIO CASUALTY INSURANCE
COMPANY,

           Appellant.

No. 67832-9-I

ORDER GRANTING MOTION
TO ADMIT ADDITIONAL
EVIDENCE, DENYING
MOTION FOR
RECONSIDERATION, AND
WITHDRAWING OPINION

The respondent, Trinity Universal Insurance Company of Kansas, filed a motion to admit additional evidence. The appellant, Ohio Casualty Insurance Company, has filed an opposition to the motion, and Trinity filed a reply. A panel of the court has considered the motion pursuant to RAP 9.11 and has determined that the motion should be granted.

The respondent, Trinity Universal Insurance Company of Kansas, filed a motion for reconsideration. The appellant, Ohio Casualty Insurance Company, has filed an answer. A panel of the court has considered the motion and has determined that the motion should be denied.

The court on its own motion has determined that the published opinion filed March 18, 2013 should be withdrawn and replaced with a substitute opinion.

Now, therefore, it is

ORDERED that the motion to admit additional evidence is granted; it is further

ORDERED that the motion for reconsideration is denied, it is further

ORDERED that the opinion filed March 18, 2013 is withdrawn, and it is further

No. 67832-9-I/2

ORDERED that a substitute opinion shall be published and printed in the Washington Appellate Reports.

DATED this _19th_ day of _August_____, 2013.

_Appelwick, J_

WE CONCUR:

_[signature]_

_Schindler, J_

2

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

TRINITY UNIVERSAL INSURANCE
COMPANY OF KANSAS,

     Respondent,

    v.

OHIO CASUALTY INSURANCE
COMPANY,

     Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 67832-9-I

DIVISION ONE

PUBLISHED OPINION

FILED: August 19, 2013

APPELWICK, J. — Trinity defended and settled a personal injury claim made against Ohio's insured. Trinity then sued Ohio for subrogation, equitable contribution, and insurer bad faith under the CPA[1] and IFCA.[2] When Ohio failed to appear, Trinity obtained a default order and judgment for defense and indemnification costs, as well as treble damages under the CPA and IFCA. Trinity claims that under the principle of equitable subrogation, it was entitled to assert the insured's CPA and IFCA claims against Ohio, even without express agreement. We reverse the portions of the judgment based upon the CPA and IFCA claims. We affirm the judgment for defense and indemnification costs.

## FACTS

In September 2007, Philip Riley was injured when he fell off scaffolding at a construction site in Kitsap County. Riley was employed by a subcontractor, Cascade Construction Company. Riley sued the worksite's general contractor, Millennium

---

[1] Washington Consumer Protection Act, ch. 19.86 RCW.
[2] Insurance Fair Conduct Act, ch. 48.30 RCW

Building Company Inc. Trinity Universal Insurance Company of Kansas insured Cascade, while Ohio Casualty Insurance Company insured Millennium.

Millennium tendered defense of the lawsuit to Ohio. Ohio initially accepted tender and appointed an attorney to represent Millennium. But, Ohio then tendered Millennium's defense to Trinity, claiming that Millennium was an additional insured under the policy Trinity issued to Cascade. Though Riley's complaint alleged only Millennium's acts or omissions, Trinity acknowledged it was conceivable that some act or omission by Cascade could have played a role in Riley's injury. Therefore, in January 2009, Trinity accepted tender and took over defense of the lawsuit without a reservation of rights.

In August 2009, Trinity attempted to tender Millennium's defense back to Ohio. Trinity contended that, under the circumstances of complaint, Trinity and Ohio were at least coprimary insurers. Trinity reminded Ohio that, under Washington law, an insurer's duty to defend is triggered if the insurance policy conceivably covers allegations in the complaint.[3] Trinity pointed out that the complaint alleged only Millennium's acts or omissions, triggering Ohio's duty to defend. In other words, if Millennium's acts or omissions were found to be the cause of the accident, Ohio would be entirely responsible for defense and indemnification.

But, Ohio refused to accept the retender. Ohio cited an "'other insurance'" provision in Millennium's policy, which stated that Ohio's insurance is primary except if "'any other primary insurance [is] available to you covering liability for damages arising

---

[3] Am. Best Food, Inc. v. Alea London, Ltd., 168 Wn.2d 398, 404, 229 P.3d 693 (2010).

out of the premises or operations.'" Based on this provision, Ohio insisted that its coverage was excess to Trinity's.

In December 2009, Trinity notified Ohio and the Washington State Insurance Commissioner that it planned to sue unless Ohio agreed to participate in Millennium's defense. Trinity explained that it would be asserting its equitable contribution rights as Cascade's insurer, as well as the direct, subrogated rights of Millennium. Ohio again refused.

Trinity continued defense and ultimately settled Riley's claims for $225,000 in January 2010. Millennium and Cascade received a full and complete release of all Riley's claims.

Trinity served the insurance commissioner on May 12, 2010,[4] with a summons and complaint against Ohio for subrogation, equitable contribution, and insurer bad faith. On May 13, 2010, the commissioner forwarded the summons and complaint by certified mail to Ohio's registered agent for service, Corporation Service Company (CSC). The commissioner received a return receipt stamped and dated by CSC. CSC has no record of receiving Trinity's summons and complaint. The parties do not dispute that Trinity did not provide notice of the lawsuit to Ohio's claims representative or its outside counsel.

Trinity filed its complaint with the court on July 7, 2010. Trinity alleged that Ohio improperly relied on its "other insurance" exclusion to deny defense, because Riley's complaint did not specify the cause of the accident. Trinity asserted five causes of

---

[4] Ohio is a foreign insurer, so service on the insurance commissioner constitutes service on the insurer. RCW 48.05.200(1).

3

action against Ohio. First, Trinity argued that by withdrawing from and refusing to contribute to Millennium's defense, Ohio breached its contractual duty to defend Millennium. Second, Trinity claimed that Ohio breached its duty of good faith and fair dealing by unreasonably refusing to defend Millennium, in violation of IFCA. Third, Trinity claimed that Ohio failed to respond to pertinent communications from a claimant within 10 days, as required by WAC 284-30-360(3). Fourth, Trinity argued that the same conduct constituted per se violations of the CPA. Lastly, Trinity claimed it was entitled to equitable contribution for Ohio's share of Millennium's defense, because both Trinity and Ohio had obligations to defend.

When Ohio failed to appear or answer, Trinity moved ex parte for a default order and judgment. Trinity requested the full cost of defending and indemnifying Millennium, attorney fees, and treble damages under IFCA and the CPA, totaling $764,271. Trinity provided declarations and other exhibits supporting its request for damages. On July 14, 2010, a court commissioner granted the motion and entered judgment in the full amount.

Trinity waited a year and five days before collecting on the judgment. Trinity admitted that it purposefully waited a year to collect in order to gain a procedural advantage over Ohio. On August 24, 2011, Ohio filed a motion to vacate the default order and set aside the judgment. Ohio argued the default judgment should be overturned, because (1) Ohio was not served; (2) Trinity had no standing to bring the claims; (3) the court commissioner failed to enter findings of fact and conclusions of law necessary to support the judgment; (4) Ohio's failure to appear was inadvertent, because it was unaware of the lawsuit; and (5) Ohio could assert prima facie defenses

4

to liability and damages. The court denied Ohio's motion to vacate and this appeal followed.

## DISCUSSION

Ohio makes several arguments on appeal. Ohio argues that the default judgment should be vacated under CR 60(b)(1), because its failure to appear was due to inadvertence or excusable neglect and it can assert prima facie defenses. Ohio contends that Trinity either waived or is estopped from asserting the one year time limitation for CR 60(b)(1) motions, because Trinity purposefully delayed in collecting the default judgment.

Ohio argues that the default order and judgment are void due to lack of subject matter jurisdiction, because Trinity did not have standing to bring statutory insurer bad faith claims against Ohio. Ohio maintains that Trinity lacked standing to assert the IFCA and CPA claims, because those claims belong to Millennium and Trinity never received express assignment from Millennium.

Ohio also argues that Trinity improperly obtained the default judgment through misrepresentation or misconduct, so the judgment should be vacated under CR 60(b)(4). Ohio asserts that Trinity's alleged damages were uncertain and speculative, so the trial court erred by entering default without holding an evidentiary hearing and making findings. Lastly, Ohio argues that the trial court should not have granted Trinity's supplemental attorney fees, because Trinity had no legal right to them.

Default judgments are generally disfavored in Washington. Griggs v. Averbeck Realty, Inc., 92 Wn.2d 576, 581, 599 P.2d 1289 (1979). Courts prefer to determine cases on their merits rather than by default. Id. In reviewing an entry of default, the

court's principal inquiry should be whether the default judgment is just and equitable. Id. at 581-82. A default judgment may be set aside in accordance with CR 60(b). CR 55(c)(1). Resolution of a motion to vacate a default judgment is within trial court's sound discretion. Hwang v. McMahill, 103 Wn. App. 945, 949, 15 P.3d 172 (2000). As such, we review a trial court's decision on a motion to vacate a default judgment for abuse of discretion. Morin v. Burris, 160 Wn.2d 745, 753, 161 P.3d 956 (2007). A trial court abuses its discretion when it is exercised on untenable grounds or for untenable reasons. Id. On the other hand, whether a judgment is void is a question of law that we review de novo. Dobbins v. Mendoza, 88 Wn. App. 862, 871, 947 P.2d 1229 (1997).

I.   CR 60(b)(1) Mistake, Inadvertence, or Excusable Neglect

Grounds for vacating a default judgment under CR 60(b)(1) include mistake, inadvertence, surprise, and excusable neglect. A defendant moving to vacate under CR 60(b)(1) must show four factors: (1) its failure to timely appear was due to mistake, inadvertence, surprise, or excusable neglect; (2) there is substantial evidence supporting a prima facie defense; (3) it acted with due diligence after notice of the default judgment; and (4) vacating the default judgment would not cause the plaintiff substantial hardship. Little v. King, 160 Wn.2d 696, 703-04, 161 P.3d 345 (2007).

A CR 60(b) motion must be brought within one year after the default order or judgment is entered. This one year time limit is strictly enforced and the trial court may not extend the deadline. See CR 6(b). Here, the court commissioner entered the default order and judgment against Ohio on July 14, 2010. Ohio filed its motion to vacate on August 24, 2011, more than a year later.

Ohio argues that, because Trinity purposefully delayed executing on the judgment, Trinity should be barred from asserting the CR 60(b) one year time limitation. Trinity acknowledged that it deliberately waited a year and five days to collect on the judgment to gain a procedural advantage. But, Washington courts do not consider it deceptive or unfair for a plaintiff to wait a year to collect on a default judgment. See, e.g., Friebe v. Supancheck, 98 Wn. App. 260, 264, 267, 992 P.2d 1014 (1999) (refusing to characterize the Friebes' "'legal sleight-of-hand'" in waiting a year and two days to collect on a default judgment "as unfair or deceptive"); Allison v. Boondock's, Sundecker's & Greenthumb's, Inc., 36 Wn. App. 280, 285-86, 673 P.2d 634 (1983).

Ohio nonetheless cites Lybbert v. Grant County to argue that Trinity either waived its time limitation argument or should be estopped from asserting it. 141 Wn.2d 29, 1 P.3d 1124 (2000). But, Lybbert is not on point here. In that case, the Lybberts attempted to sue Grant County, but mistakenly served process on the county commissioner's administrative assistant. Id. at 32. Despite defective service, the county filed a notice of appearance. Id. The county indicated that it was not waiving objections to improper service, but for the next nine months, it acted like it was preparing to litigate on the merits. Id. For instance, it served interrogatories and requests for production on the Lybberts. Id. The Lybberts asked in interrogatories if the county would be relying on the affirmative defense of insufficient service of process. Id. at 33. The county waited months to respond. Id. When it finally did, the statute of limitations had run on the Lybberts' claim, so they could no longer achieve proper service. Id. at 33-34. The county then requested the case be dismissed for that reason. Id.

7

The Lybberts argued that the county either waived or should be equitably estopped from asserting insufficient service of process. Id. at 34-35. The elements of equitable estoppel are: (1) an admission, statement, or act inconsistent with a claim afterwards asserted; (2) action by another in reasonable reliance upon that act, statement, or admission; and (3) injury to the relying party from allowing the first party to contradict or repudiate the prior act, statement, or admission. Id. at 35. The court held that the Lybberts established the first two elements but failed the third, because they did not reasonably or justifiably rely on the county's actions. Id. at 35-36. Waiver can occur in two ways. Id. at 39. First, it can occur if the defendant's assertion of a defense is inconsistent with previous behavior. Id. Second, if the defendant's counsel is dilatory in asserting a defense. Id. The Lybbert court held that the county waived its defense of insufficient service, because it both acted inconsistently and was dilatory. Id. at 42.

Here, unlike the county's action in Lybbert, Trinity took no inconsistent action. Trinity informed Ohio of its intent to sue unless Ohio joined Millennium's defense.[5] When Ohio refused, Trinity brought suit as promised. Trinity sought default when Ohio failed to appear, then attempted to collect a year later. None of this was inconsistent with asserting the one year time bar under CR 60(b). Trinity never masked its time limitation defense by asserting a contrary argument. Moreover, waiting a year to collect

---

[5] In a letter Trinity sent to Ohio months before filing suit, Trinity wrote, "Please be aware that the purpose of this letter is to give Ohio 20 days to agree to participate in the defense of Millennium. If Ohio refuses to do so, Trinity will pursue all of its rights against Ohio in court. This will include a claim for defense costs, whatever payment may be made by way of indemnification (should a settlement or judgment occur), treble damages, and coverage related attorney fees permitted under the IFCA and Olympic Steamship." Olympic S.S. Co. v. Centennial Ins. Co., 117 Wn.2d 37, 811 P.2d 673 (1991).

is not characterized as unfair or deceptive, so we do not construe it as dilatory. Trinity violated no deadline or court rule in waiting a year to collect. Characterizing such an action as dilatory would encompass a myriad of other strategic decisions attorneys are permitted to make. And, Trinity had no obligation to give Ohio notice of the default judgment, so Ohio could not have reasonably relied on any act or statement by Trinity. See CR 55(a)(3). Rather, it was Ohio's responsibility to make a CR 60(b)(1) motion within one year of the default order. We hold that neither equitable estoppel nor waiver are applicable here.

Trinity was entitled under Washington law to wait a year to collect on the default judgment. Therefore, Ohio's CR 60(b)(1) arguments are time barred and cannot provide a proper basis to vacate. Ohio's prima facie defenses are irrelevant, because the time bar is absolute.[6]

## II.    CR 60(b)(5) Lack of Subject Matter Jurisdiction

Ohio argues that Trinity lacked standing to bring Millennium's statutory claims under IFCA and the CPA. Lack of standing, Ohio posits, means the trial court lacked

---

[6] Even if we were to consider Ohio's claim of inadvertence or excusable neglect, we find it unavailing. Ohio attributes its failure to appear to two possible reasons: (1) the insurance commissioner's service on CSC was faulty or failed, or (2) CSC itself failed to notify Ohio of the lawsuit. The first excuse is unconvincing, because the record shows that the insurance commissioner took all statutorily required steps to achieve service on CSC. See RCW 48.05.200 (requiring service on foreign insurer to be on insurance commissioner); 48.02.200(2) (requiring commissioner to send a copy of the process by mail or other means reasonably calculated to give notice). And, the commissioner received a return receipt dated and stamped by CSC. The second excuse is similarly unpersuasive. We have repeatedly held that when a company's failure to respond to a properly served summons and complaint was due to a breakdown of internal office procedure, it is not excusable under CR 60(b). TMT Bear Creek Shopping Ctr., Inc. v. PETCO Animal Supplies, Inc., 140 Wn. App. 191, 212-13, 165 P.3d 1271 (2007).

subject matter jurisdiction over Trinity's claims, so the default order is void under CR 60(b)(5). A court enters a void order only when it lacks personal jurisdiction or subject matter jurisdiction over a claim. Marley v. Dep't of Labor & Indus., 125 Wn.2d 533, 540, 886 P.2d 189 (1994). We use caution in characterizing an issue as jurisdictional or a judgment as void, because the consequences of a court acting without subject matter jurisdiction "are draconian and absolute." Cole v. Harveyland, LLC, 163 Wn. App. 199, 205, 258 P.3d 70 (2011).

In federal courts, a plaintiff's lack of standing deprives the court of subject matter jurisdiction, making it impossible to enter a judgment on the merits. Fleck & Assocs., Inc. v. City of Phoenix., 471 F.3d 1100, 1102 (9th Cir. 2006). By contrast, the Washington Constitution places few constraints on superior court jurisdiction. See CONST. art. IV, § 6 ("The superior court shall also have original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court."); see also Ullery v. Fulleton, 162 Wn. App. 596, 604, 256 P.3d 406, review denied, 173 Wn.2d 1103, 271 P.3d 248 (2011). Accordingly, if a defendant waives the defense that a plaintiff lacks standing, a Washington court can reach the merits. Ullery, 162 Wn. App. at 604. Therefore, in Washington, a plaintiff's lack of standing is not a matter of subject matter jurisdiction.[7] Id.

---

[7] Ohio cites a footnote from a 2002 Washington Supreme Court opinion that says, "[S]tanding is a jurisdictional issue that can be raised for the first time on appeal." Int'l Ass'n of Firefighters, Local 1789 v. Spokane Airports, 146 Wn.2d 207, 212 n.3, 45 P.3d 186, 50 P.3d 618 (2002). This is the type of "'drive-by jurisdictional ruling'" we recently declined to rely on in Cole. 163 Wn. App. at 208 (internal quotation marks omitted) (quoting Arbaugh v. Y&H Corp., 546 U.S. 500, 510-11, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006)).

Rather, the critical concept in determining whether a court has subject matter jurisdiction is the type of controversy. Cole, 163 Wn. App. at 209. Washington superior courts have subject matter jurisdiction over tort actions. Williams v. Leone & Keeble, Inc., 171 Wn.2d 726, 730, 254 P.3d 818 (2011). Indeed, both IFCA and the CPA allow claimants to bring suit in superior court. RCW 48.30.015(1); RCW 19.86.090. Because Trinity's action against Ohio was well within the superior court's subject matter jurisdiction, all other defects or errors go to something other than subject matter jurisdiction. Cole, 163 Wn. App. at 209.

III.    Standing To Assert an Insured's Statutory Rights

Though the doctrine of standing does not implicate subject matter jurisdiction, it does prohibit a plaintiff from asserting another's legal rights. Walker v. Munro, 124 Wn.2d 402, 419, 879 P.2d 920 (1994). The claims of a plaintiff who lacks standing cannot be resolved on the merits and must fail. Ullery, 162 Wn. App. at 604-05. Whether a party has standing to sue is a question of law reviewed de novo. Spokane Airports v. RMA, Inc., 149 Wn. App. 930, 939, 206 P.3d 364 (2009).

Ohio argues that Trinity lacked standing to bring Millennium's IFCA and CPA claims, because such claims belong to the insured, not the insurance company. Without express assignment, Ohio argues, Trinity remained a third party claimant with no standing to assert Millennium's statutory claims against Ohio. Trinity claimed a right of subrogation and that "assignment was automatic via the policy."

Subrogation is an equitable doctrine the essential purpose of which is to provide for a proper allocation of payment responsibility. Mahler v. Szucs, 135 Wn.2d 398, 411, 957 P.2d 632 (1998). It seeks to impose ultimate responsibility for a wrong or loss on

11

the party who, in equity and good conscience, ought to bear it. Id. There are two features to subrogation. Id. at 412. The first is the right to reimbursement. Id. The second is the mechanism for the enforcement of the right. Id. The right to reimbursement may arise by operation of law, termed legal or equitable subrogation, or by contract, called conventional subrogation. Id. By virtue of payments made to or on behalf of an insured, an insurer has a right of reimbursement under general subrogation principles. Id. at 413. That reimbursement may be enforced as a type of lien against any recovery the insured secures from a third party. Id. Alternatively, the insurer, standing in the shoes of its insured, may pursue an action in the insured's name against the third party to enforce the reimbursement right. Id. Trinity asserts a right of subrogation under both, equitable and conventional subrogation. We first address whether the CPA and IFCA claims are subject to being subrogated.

An insured may assign its bad faith claims to a third party. Safeco Ins. Co. of Am. v. Butler, 118 Wn.2d 383, 397, 399, 823 P.2d 499 (1992). An assignee steps into the shoes of the assignor, and has all the rights of the assignor. Mut. of Enumclaw Ins. Co. v. USF Ins. Co., 164 Wn.2d 411, 424, 191 P.3d 866 (2008). The assignee's cause of action is then direct, not derivative. Estate of Jordan v. Hartford Accident & Indem. Co., 120 Wn.2d 490, 495, 844 P.2d 403 (1993). But, without assignment, a third party claimant has no right of action against an insurance company for breach of the duty of good faith. Tank v. State Farm Fire & Cas. Co., 105 Wn.2d 381, 393, 715 P.2d 1133 (1986). In Tank, the Washington Supreme Court rejected CPA claims brought by third parties against insurance companies. Id. The court found nothing in the CPA's statutory or regulatory language that gave third party claimants the right to sue. Id.

12

Similarly, IFCA provides that "[a]ny first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action in the superior court of this state to recover the actual damages sustained." RCW 48.30.015(1). The statute defines "first party claimant" as "an individual, corporation, association, partnership, or other legal entity asserting a right to payment as a covered person under an insurance policy or insurance contract." RCW 48.30.015(4). IFCA allows the superior court to award reasonable attorney fees, litigation costs, and unlimited trebling of actual damages. RCW 48.30.015(2), (3). Millennium meets the first party definition.

IFCA clearly vests a cause of action with *first party claimants*. RCW 48.30.015(1). That is, individuals and businesses who own an insurance policy may bring suit against their insurer for unreasonably denying a claim of coverage. The purpose of IFCA is to protect individual policy holders from unfair practices by their insurers. S.B. REP. on Engrossed Substitute S.B. 5726, at 2, 60th Leg., Reg Sess. (Wash. 2007); H.B. REP. on Engrossed Substitute S.B. 5726, at 1, 60th Leg., Reg Sess. (Wash. 2007). Just like the CPA, nothing in the language of IFCA gives third party claimants the right to sue. And, nowhere does IFCA create an independent right for insurers to bring a claim on their own behalf. We see no reason to conclude that an IFCA claim should be treated differently than a CPA claim with respect to assignability. However, without express assignment, an insurer may not independently assert its insured's IFCA claims.

Trinity's conventional subrogation claim does not involve an assignment of rights pursuant to a settlement agreement. Instead, Trinity relies exclusively on the

13

subrogation language of its insurance policy. Whether conventional subrogation and assignment are equivalent in all respects is an open question. See Mut. of Enumclaw, 164 Wn.2d at 424. We do not address that question here. Nor do we address whether public policy reasons may preclude the assignment of IFCA and CPA claims as part of the insuring agreement. We address only whether the language of the policy here can be fairly read as a matter of law to have granted Trinity an assignment of the right to bring those claims.[8]

Trinity did not include the policy language in the trial court record. We granted Trinity's motion pursuant to RAP 9.11 to supplement the record with the language of the policy on which its claims rely. The policy subrogation language provides:

> If the insured has rights to recover all or part of any payment we have made under this Coverage Form, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

This language does not expressly assign any IFCA and CPA claims of the insured to the insurer. Trinity made no "payments under this coverage" on any IFCA or CPA claim

---

[8] The meaning of a contract provision is a mixed question of law and fact, because we ascertain the intent of the contracting parties by viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of the interpretations advocated by the parties. Berg v. Hudesman, 115 Wn.2d 657, 666-67, 801 P.2d 222 (1990). Where the facts are undisputed, such as where the parties agree that the contract language controls and there is no extrinsic evidence to be presented, courts may decide the issue as a matter of law. Mut. of Enumclaw, 164 Wn.2d at 424 n.9. Here, Trinity relies exclusively on the policy language to sustain conventional subrogation as to the IFCA and CPA claims. Ohio was not a party to the insurance contract. Millennium, whose rights are being asserted by Trinity, was not a purchaser of the policy, Cascade was. Millennium was an additional insured under Trinity's policy by virtue of the Millennium-Cascade contract. We address the meaning of the contract here as a matter of law.

in settling with Riley. Trinity paid a personal injury claim under its liability coverage. Trinity recovered a judgment on those losses from Ohio based on subrogation of that claim and equitable apportionment, which we affirm in this opinion. Nothing remains to be reimbursed. Moreover, Millennium had no "right to recover" from Ohio. Millennium was fully defended and fully covered by Trinity as to Riley's claims. It had no losses to recover under IFCA and CPA claims. See Ledcor Indus., Inc. v. Mut. of Enumclaw Ins. Co., 150 Wn. App. 1, 11, 206 P.3d 1255 (2009). The policy language did not assign to Trinity the right to assert IFCA and CPA claims Millennium might have had. Therefore, Trinity lacked standing to assert IFCA or CPA claims under conventional subrogation against Ohio.

Trinity also argues that it owned Millennium's IFCA and CPA claims under the principle of equitable subrogation. Trinity contends that by virtue of completely defending and indemnifying Millennium, Millennium's claims against Ohio automatically transferred to Trinity by operation of law. As noted above, both the CPA claim and IFCA claim belong to the insured, not the insurer. They may be assigned, but they are not available to the insurer under equitable subrogation.

Trinity nevertheless cites two cases to argue that equitable subrogation entitled it to assert Millennium's IFCA and CPA claims. First State Ins. Co. v. Kemper Nat. Ins. Co., 94 Wn. App. 602, 971 P.2d 953 (1999); Truck Ins. Exch. of Farmers Ins. Grp. v. Century Indem. Co., 76 Wn. App. 527, 529, 887 P.2d 455 (1995). But, we find those cases inapposite here, because they deal with excess insurers, a unique class of insurers.

15

The First State court, relying on Truck, held that an excess insurer may assert CPA claims that its insured could have brought against the primary insurer, because the excess insurer is equitably subrogated to the rights of its insured. 94 Wn. App. at 609. When there is no excess insurer, the insured is his own excess insurer. Id. at 611. The primary insurer owes him a duty of good faith to protect him from excess judgment and personal liability. Id. But, if the insured purchases excess insurance, he in effect substitutes an excess insurer for himself. Id. Therefore, the excess insurer steps into the shoes of the insured. See id. at 610. It then follows that the excess insurer assumes the rights and obligations of the insured. Id.

Therefore, the duty a primary insurer owes to an excess insurer is identical to that owed the insured. Id. at 610-11. So, First State, as an excess insurer, could bring a CPA claim against the primary insurer for badly mishandling litigation, which resulted in First State having to pay $1 million out of its excess policy. Id. at 609. Allowing First State to bring its insured's CPA claims promoted public policy by encouraging primary insurers to settle within their policy limits. Id. at 611.

Trinity is not an excess insurer. Rather, Trinity alleged that it and Ohio were coprimary insurers. Trinity attempts to stretch the limited application of First State too far by arguing that a coprimary insurer should be treated like an excess insurer and be automatically equitably subrogated to the rights of its insured. While coprimary insurers owe their insured a duty of good faith, Tank, 105 Wn.2d at 386, First State does not hold that they owe one another that same duty. The policy concerns of First State are also not at play between coprimary insurers. While both Trinity and Ohio may have had

16

a duty to Millennium to defend and seek a reasonable settlement, they did not owe one another that duty.

And, perhaps most importantly, automatic equitable subrogation of primary insurers to the insureds' statutory rights would take from the insured the statutory damages to which they are entitled any time the insurer defends and indemnifies its insured. We find no basis in the statutory language of the CPA and IFCA or case law to justify doing so. Equitable subrogation entitles a paying primary insurer to seek reimbursement for losses paid. It does not allow the insurer to assert an insured's statutory rights without express agreement. Nor does it authorize the insurer to retain the proceeds of those claims. Trinity has not shown any express agreement by Millennium—whether by assignment or conventional subrogation—to transfer to Trinity the right to bring its statutory claims against Ohio, let alone to retain the proceeds of such claims. Trinity remains a third party, without standing to assert Millennium's IFCA and CPA claims against Ohio.

We therefore reverse the trial court's treble damages award under IFCA and the CPA. However, by virtue of completely defending and indemnifying Millennium, Trinity was equitably subrogated to Millennium with respect to losses it actually paid. Accordingly, we affirm the trial court's award for costs Trinity paid in defending and indemnifying Millennium.

## IV. CR 60(b)(4) Misrepresentation in Obtaining Default

A default judgment may be vacated if it resulted from "misrepresentation, or other misconduct of an adverse party." CR 60(b)(4). Ohio argues that the default order and judgment should be vacated, because it resulted from Trinity's misrepresentation and/or

misconduct. Trinity's alleged misrepresentation comes from one line in its ex parte motion for default: "Trinity, <u>as assignee of Millennium</u>, engaged its attorneys in this case on a contingent fee basis." (Emphasis added.) Ohio argues that Trinity did not show any evidence of Millennium's assignment of its CPA and IFCA claims and did not support this assertion anywhere in its motion for default, so it constitutes an affirmative misrepresentation. We have reversed the portion of the judgment based upon the CPA and IFCA claims, making this issue moot. Trinity's status as an assignee is not material to its status as an equitable subrogee. Therefore, we decline to vacate the balance of the judgment on CR 60(b)(4) grounds.

## V. Hearing and Findings

Ohio argues that Trinity's alleged damages were uncertain, so the trial court erred by entering a default judgment without holding a hearing and making findings. Ohio points out that Trinity alleged damages in its complaint "'in an amount to be proven at trial.'" As a result, Ohio argues, Trinity failed to allege sum certain damages, so the court should have conducted an evidentiary hearing and was required to make findings. We agree that the lack of express findings would be troubling in regards to the trial court's award for treble damages under IFCA and the CPA. But, again, we have reversed that award.

We are not similarly troubled by the lack of a hearing and express findings as far as the award for Trinity's defense and indemnification costs. Ohio is correct that a default judgment must be limited to the amount demanded in the complaint. CR 54(c) ("A judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment."). Therefore, if a complaint alleges damages in

an amount to be proven at trial, damages are uncertain and require findings. CR 55(b)(2). However, CR 55(b)(2) specifies that a court "*may* conduct such hearings as are deemed necessary." (Emphasis added.) Even where damages are uncertain, the trial court has considerable discretion in determining the extent of proof needed. Miller v. Patterson, 45 Wn. App. 450, 460, 725 P.2d 1016 (1986). Presentation of live testimony is not required. See id. Rather, the court's judgment may be based on affidavits or declarations. Id.

Moreover, the Washington Supreme Court has held that even where a default judgment does not contain express findings and conclusions, implied findings may be sufficient. Little, 160 Wn.2d at 706-07. In Little, the judge did not make express findings and conclusions in her default judgment. 160 Wn.2d at 706. But, she listed all the materials she considered and entered a default judgment in specific amounts. Id. at 707. The Washington Supreme Court agreed with the Court of Appeals that "'[t]his necessarily implies a finding of fact that Little suffered damages in the given amounts and the conclusion of law that Little was entitled to recover those sums from King.'" Id. (alteration in original). Such implied findings of fact may be sufficient, because CR 55(b)(2) does not define what constitutes adequate findings of fact and conclusions of law. Id. at 706.

Ohio had reasonable notice that it could be liable for the entire amount of defense and indemnification costs. In the December 2009 letter to Ohio, Trinity declared its intent to recover defense and indemnification costs if Ohio did not accept retender of defense. Trinity argued that Ohio may be entirely responsible for indemnification and defense of Millennium, depending on whether Millennium and/or

Cascade were determined to be at fault. Trinity did not allege sum certain damages in its complaint, but from a fair reading of Trinity's complaint, it is apparent that Ohio might be liable for the entire amount of settlement and defense costs. Trinity repeatedly discusses Ohio's duty to defend its insured and responsibility for indemnification. Therefore, the amounts Trinity requested in its complaint and later in its ex parte motion do not differ substantially.

In its ex parte motion for default, Trinity listed the entire out-of-pocket amount it paid to defend and indemnify Millennium. And, Trinity explained that these expenses should have been borne by Ohio alone, based on Ohio's policy with Millennium. Trinity attached a declaration and detailed payment history verifying these costs. The trial court was entitled to base its judgment on this evidence. See Miller, 45 Wn. App. at 460. It did not need to conduct a separate hearing with live testimony. See id. The court's order of default and judgment explained that its decision was based on the provided declarations, record, and pleadings. Like in Little, this necessarily implies a finding of fact that Trinity suffered the damages described and the conclusion of law that Trinity was entitled to recover those sums from Ohio. The trial court acted within its discretion in relying on the evidence Trinity provided. Because the trial court made implied findings and did not need to hold an evidentiary hearing, we decline to reverse Trinity's award for defense and indemnification costs.

VI.   Attorney Fees

Ohio asks this court to vacate the trial court's award of attorney fees in this action to Trinity. Below, the trial court cited three legal grounds for the $32,400 attorney fees award: the CPA, IFCA, and the Olympic Steamship doctrine. Olympic S.S. Co. v.

20

Centennial Ins. Co., 117 Wn.2d 37, 52, 811 P.2d 673 (1991). Conversely, Trinity requests attorney fees on appeal, pursuant to RAP 18.1, for the same reasons it was awarded fees below.

Trinity does not have standing to assert Millennium's IFCA and CPA claims. The attorney fee award cannot be sustained on these bases. Nor does Olympic Steamship provide a basis for the award of fees on these facts.

Under the Olympic Steamship doctrine, courts may award fees to an insured who successfully sues an insurer to obtain insurance coverage. 117 Wn.2d at 52. Assignees of the insured may also recover fees if they are compelled to sue an insurer to secure coverage. McRory v. N. Ins. Co. of N.Y., 138 Wn.2d 550, 556, 980 P.2d 736 (1999). Similarly, the Mid-Continent court allowed attorney fees when the insurer was contractually subrogated to the rights of the insured. Order Granting Def. Titan's Mot. for Att'y Fees, Mid-Continent Cas. Co. v. Titan Constr. Corp., No. C05-1240MJP, 2009 WL 2391527, at *2, 2009 U.S. Dist. LEXIS 72424, at *5 (W.D. Wash. Aug. 3, 2009). There, the insured remained the real party in interest. Id.

In contrast, in Safeco, we denied an award of Olympic Steamship fees when the insurer asserted its own equitable contributions rights. Safeco. Ins. Co. of Ill. v. Country Mut. Ins. Co., 165 Wn. App. 1, 8-9, 267 P.3d 540 (2011). Here, Trinity's claims against Ohio were not based on an assignment or contractual subrogation of rights by Millennium. See id. at 8. Having failed to produce evidence of assignment or contractual right, Trinity lacked standing to assert those claims of the insured. Rather, Trinity's claim arose from its own equitable subrogation rights as the paying insurer, not

the rights of the insured. Trinity is not entitled to attorney fees under <u>Olympic Steamship</u>,.

For these reasons, the attorney fees awarded below are reversed, and attorney fees on appeal are denied.

We affirm in part, reverse in part, and remand to the trial court to correct the judgment.

_____ Appelwick, J.

WE CONCUR:

_____          _____