## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| ALEX SAFRANSKI, an individual | No.  47716-5-II |
| Appellant/Cross-Respondent, | |
| v. | |
| DUMA VIDEO, INC., a Washington corporation, and Sultan Weatherspoon, an individual, | UNPUBLISHED OPINION |
| Respondents/Cross-Appellants. | |

JOHANSON, J. — Alex Safranski appeals the trial court's summary judgment order denying dismissal of Sultan Weatherspoon's fraud claim.  Weatherspoon cross appeals a prejudgment interest award to Safranski.  We hold that Weatherspoon lacks standing, and therefore we reverse and remand for entry of an order granting summary dismissal of Weatherspoon's fraud claim.[1] We also affirm the prejudgment interest award.

---

[1] Safranski also appeals the denial of his motion to remit the jury award to Weatherspoon.  We do not reach the remittitur issue because of our decision to reverse the summary judgment order due to Weatherspoon's lack of standing.

FACTS

I. BACKGROUND

Weatherspoon founded Duma Video Inc. (Duma Inc.) in 2001 to develop and patent video software. In 2003, Weatherspoon employed Safranski as a software programmer and gave Safranski 20 percent of Duma Inc. stock. Broadcast Microwave Services Inc. (BMS) was a customer of Duma Inc.

In 2012, Safranski asserted a claim against Duma Inc. for Weatherspoon's alleged improper business expense reimbursements. The parties agreed that due to irreconcilable differences, the best course of action was to solicit a sale of Duma Inc.'s assets to BMS. But, unbeknownst to Weatherspoon, Safranski entered into an employment contract with BMS that included the promise of a substantial payment to him contingent on Safranski's delivery of a decoder.

Thereafter, because Weatherspoon did not know about Safranski's deal with BMS, Duma Inc. entered into an asset purchase agreement (APA) wherein Duma Inc. sold its assets to BMS. Under the APA, BMS agreed to pay Duma Inc. for its assets and to pay an additional "earn-out" contingent on Duma Inc.'s delivery of a decoder. But Safranski delivered his decoder first. BMS paid Duma Inc. for its assets, but rejected Duma Inc.'s decoder and refused to pay Duma Inc. the earn-out payment because BMS needed only one decoder.

Safranski filed suit against Weatherspoon for breaching his duties to Duma Inc. by taking improper reimbursements for nonbusiness expenses. Weatherspoon and Duma Inc. asserted fraud counterclaims against Safranski. Weatherspoon alleged that he suffered financial loss because Safranski fraudulently induced Weatherspoon to sell the assets of Duma Inc., which Weatherspoon

would not have done if Safranski had revealed the truth about his employment agreement with BMS. Weatherspoon claimed monetary damages.

## II. Summary Judgment on Standing

Safranski moved for summary judgment against Duma Inc.'s and Weatherspoon's fraud counterclaims based on lack of standing. Weatherspoon argued that he had an individual, direct claim of fraud against Safranski rather than a shareholder's claim requiring proof of a special duty. The trial court dismissed Duma Inc.'s claims because Duma assigned all lawsuits to BMS as part of the purchase agreement and therefore Duma Inc. lacked standing to sue. But the trial court denied the summary judgment motion with respect to Weatherspoon's standing to bring a fraud claim against Safranski.

## III. Trial

The case proceeded to trial. A jury found Safranski liable to Weatherspoon for fraud and awarded damages.

Regarding Safranski's claim that Weatherspoon falsely received expense reimbursement from Duma Inc., the parties stipulated to $279,290 in undocumented expenses. Following a bench trial, the trial court awarded Safranski $105,744. The trial court found all of Safranski's claims were liquidated and awarded $37,429 in prejudgment interest.

Safranski appeals the trial court's denial of his summary judgment motion to dismiss. Weatherspoon cross appeals the prejudgment interest award.

ANALYSIS

I. WEATHERSPOON'S STANDING

Safranski argues that the trial court erred by denying his motion for summary judgment because Weatherspoon lacked standing to bring a claim against Safranski under the general rule that shareholders cannot sue for harm to a corporation or its exceptions. Weatherspoon argues that he had individual standing to directly assert a fraud claim against Safranski and had standing under the exceptions to the general rule.[2] We agree with Safranski.

A. STANDARD OF REVIEW

We review a summary judgment denial de novo and engage in the same inquiry as the trial court. *SentinelC3, Inc. v. Hunt*, 181 Wn.2d 127, 140, 331 P.3d 40 (2014). Summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). "On a motion for summary judgment, all facts submitted and reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party." *SentinelC3*, 181 Wn.2d at 140. "Whether a party has standing to sue is

---

[2] Weatherspoon also argues that Safranski cannot appeal the denial of his summary judgment motion because a trial was already held on the factual issues. We disagree. Generally, the denial of summary judgment may be reviewed after the entry of a final judgment if summary judgment was denied based on a substantive legal issue. *Univ. Vill. Ltd. Partners v. King County*, 106 Wn. App. 321, 324, 23 P.3d 1090 (2001). Whether a party has standing to sue is a legal issue. *Trinity Universal Ins. Co. of Kansas v. Ohio Cas. Ins. Co.*, 176 Wn. App. 185, 199, 312 P.3d 976 (2013). Because Weatherspoon's motion for summary judgment turned on the legal issue of standing, we may review it. Weatherspoon also argues that we cannot properly review the denial of the CR 50 motion renewing Safranski's summary judgment motion because Safranski failed to designate the trial record. But we do not reach the CR 50 motion.

a question of law reviewed de novo." *Trinity Universal Ins. Co. of Kansas v. Ohio Cas. Ins. Co.*, 176 Wn. App. 185, 199, 312 P.3d 976 (2013).

### B.  LEGAL PRINCIPLES

"Every action shall be prosecuted in the name of the real party in interest."  CR 17(a).  "The standing doctrine requires that a plaintiff must have a personal stake in the outcome of the case in order to bring suit."  *Sabey v. Howard Johnson & Co*., 101 Wn. App. 575, 584, 5 P.3d 730 (2000).

"Ordinarily, a shareholder cannot sue for wrongs done to a corporation, because the corporation is a separate entity:  the shareholder's interest is viewed as too removed to meet the standing requirements."  *Sabey*, 101 Wn. App. at 584.  "Even a shareholder who owns all or most of the stock, but who suffers damages only indirectly as a shareholder, cannot sue as an individual."  *Sabey*, 101 Wn. App. at 584.

But a shareholder may "sue to redress direct injuries to him or herself regardless of whether the same violation injured the corporation."  12B *William Meade Fletcher, Fletcher Cyclopedia of the Law of Corporations*, § 5911, at 526 (2009).[3]  Thus, whether a shareholder has a direct claim turns on who suffered the alleged harm and who would receive the benefit of any recovery or other remedy.  *Id*., at 517.  If damages to a shareholder result indirectly as the result of injury to a corporation and not directly, the shareholder cannot sue as an individual.  *Id*., at 522.  An individual cause of action can be asserted when the wrong is to both the shareholder and to the corporation.  *Id*., at 517.

---

[3] Washington courts have expressly adopted analysis from *Fletcher Cyclopedia of the Law of Corporations*.  *See Sabey*, 101 Wn. App. at 584-85.  And both parties rely on *Fletcher* to explain the types of suits that may be brought by shareholders.

Fraudulent acts depriving a shareholder of his or her rights from the advantage of majority control of a corporation is among the type of cases that enable a shareholder to sue under a direct claim. 12B *Fletcher* § 5915, at 544-45. "A stockholder may maintain an individual, distinguished from a derivative, action against directors, officers, or others for wrongs constituting a direct fraud on him or her, such as losing control of the corporation as a result of fraud." 19 AM. JUR. 2D *Corporations* § 1943 (2016).

## C. WEATHERSPOON LACKS STANDING UNDER THE GENERAL RULE

To determine if Weatherspoon had standing to sue, we analyze whether Weatherspoon had a direct claim. Whether Weatherspoon had a direct claim depends on the injury sustained. Weatherspoon argues that he sustained an individual injury based on either loss of control of Duma Inc. or a diminution of the value of Duma Inc.'s stock as a result of Safranski's fraudulent acts.[4]

Weatherspoon maintains that as a result of Safranski's misrepresentations, he relinquished control of Duma Inc. as the majority shareholder by selling it to BMS. But Weatherspoon fails to show how he lost control of Duma Inc. when he merely sold Duma Inc.'s assets and not his Duma Inc. stock. At all relevant times, Weatherspoon remained the majority shareholder of Duma Inc. Thus, Weatherspoon's argument that he had standing because he suffered a direct injury by loss of control of Duma Inc. fails.

Next, Weatherspoon asserts that he suffered a direct injury because of the loss of value of Duma stock. But Weatherspoon's monetary damages were sustained indirectly as a result of the

---

[4] Weatherspoon argues that in addition to having standing as a result of his fraud claim, he had standing to sue Safranski on the basis of a breached fiduciary duty that Safranski owed him. Weatherspoon concedes that below he stated that his standing did not derive from a fiduciary duty. Therefore, we do not address this claim.

injury to the corporation. Weatherspoon claims that as a result of Safranski's fraud, Duma Inc. lost the full value of its assets and the loss of the "earn-out" payment. But the monetary loss was to Duma Inc. and not to Weatherspoon directly. It was Duma Inc. who sold its assets to BMS, not Weatherspoon.

Weatherspoon suffered injury only to the extent that the value of Duma Inc.'s stock was decreased by Safranski's fraud. Thus, Weatherspoon's claim for monetary damages is only indirect. Weatherspoon's argument that he had standing as a result of a direct monetary loss fails.

### D. EXCEPTIONS TO THE GENERAL RULE

Next, we determine whether Weatherspoon could have asserted a claim based on exceptions to the general rule that shareholders cannot sue for harm done to a corporation: the special duty exception and the separate and distinct injury exception. Safranski argues that Weatherspoon's claims did not fit either exceptions to the rule.[5] Weatherspoon argues that his claim qualifies under both exceptions. We agree with Safranski.

### 1. THE "SPECIAL DUTY" EXCEPTION

One exception to the general rule that a shareholder cannot sue for wrongs done to a corporation is where there is a special duty between the wrongdoer and the shareholder. *Sabey*, 101 Wn. App. at 584. Whether there was a special duty depends on whether a duty was owed to the individual independent of his status as a shareholder. *Sabey*, 101 Wn. App. at 585.

---

[5] Safranski argues that Weatherspoon did not bring a derivative claim nor does his claim fall within the exception for derivative claims. Weatherspoon concedes that he cannot meet the derivative suit requirements. We accept Weatherspoon's concession. Duma Inc.'s fraud claim was dismissed because its claim was sold to BMS, thus Weatherspoon could not have maintained an action based on Duma Inc.'s right to sue.

Here, Weatherspoon argues that he had standing to bring a direct claim of fraud against Safranski because Safranski fraudulently induced Weatherspoon to sell his corporation at a disadvantage. But as discussed above, Weatherspoon did not sell Duma Inc.; he retained ownership of Duma Inc.'s stock. Instead, Duma Inc. sold its *assets*. Therefore, Safranski's actions did not cause any personal loss to Weatherspoon apart from the loss of value of the stock, which is based solely on Weatherspoon's status as a shareholder.

Weatherspoon's argument fails because it is based on the unsupported claim that he was fraudulently induced to sell his corporation. Thus, Weatherspoon fails to establish that a special duty was owed to him independent of his shareholder status.

2.     SEPARATE AND DISTINCT INJURY EXCEPTION

A shareholder may sue for wrongs done to a corporation when the shareholder brings a claim that he suffered an injury separate and distinct from that suffered by other shareholders. *Sabey*, 101 Wn. App. at 584-85.

Weatherspoon argues that he suffered distinct damages because Safranski's actions devalued Weatherspoon's shares but not Safranski's shares. He claims that Safranski's shares were not devalued because Safranski obtained a $160,000 bonus from his employment contract with BMS. But Weatherspoon fails to explain how Safranski's profit from his employment contract from BMS uniquely altered the value of Safranski's shares in Duma Inc. When BMS bought Duma Inc. and did not pay the earn-out as expected as a result of Safranski's fraud, presumably both Weatherspoon and Safranski were valued less for their shares in Duma Inc. than they would have been otherwise. Thus, Weatherspoon's injury was not separate and distinct from other shareholders.

Next, Weatherspoon claims that he would not have sold Duma Inc. under the terms of the APA if it had not been for Safranski's fraud. But as previously discussed, it was Duma Inc. that sold its assets and it was Duma Inc. that suffered the financial loss as a result of Safranski's fraud. Weatherspoon, as a Duma Inc. shareholder, suffered a loss only indirectly due to the devaluation of Duma Inc. stock. And to the extent Weatherspoon asserts that he lost control of Duma Inc., that assertion is unsupported by any evidence. Weatherspoon remained in control of Duma Inc. after the sale. Thus, we hold that Weatherspoon did not suffer a distinct and separate injury from other Duma Inc. shareholders either because he lost control of Duma Inc.'s assets or because of the devaluation of Duma Inc.'s stock.

We hold that Weatherspoon lacked standing to sue Safranski for fraud and that the trial court improperly denied Safranski's summary judgment dismissal motion.

## II. CROSS APPEAL

### A. PREJUDGMENT INTEREST

Weatherspoon argues that the trial court abused its discretion by awarding Safranski prejudgment interest because in order to conclude that a liquidated or ascertainable amount of money was owed to Safranski, the trial court was required to make a finding that Weatherspoon improperly retained money. Weatherspoon claims that the trial court made no such finding. Safranski argues that a finding that Weatherspoon improperly misappropriated the funds was not required and the trial court properly found that Safranski's claim was liquidated in order to award prejudgment interest. We agree with Safranski.

### B. Standard of Review and Rules of Law

We review a trial court's order on prejudgment interest for abuse of discretion. *Scoccolo Constr., Inc. v. City of Renton*, 158 Wn.2d 506, 519, 145 P.3d 371 (2006). A trial court abuses its discretion when its order is manifestly unreasonable or based on untenable grounds or reasons. *Olver v. Fowler*, 161 Wn.2d 655, 663, 168 P.3d 348 (2007). "'Prejudgment interest is favored in the law based on the premise that he who retains money he should pay to another should be charged interest on it.'" *Spradlin Rock Prods., Inc. v. Pub. Util. Dist. No. 1 of Grays Harbor County*, 164 Wn. App. 641, 665, 266 P.3d 229 (2011) (quoting *Universal/Land Constr. Co. v. City of Spokane*, 49 Wn. App. 634, 641, 745 P.2d 53 (1987)). "The plaintiff should be compensated for the 'use value' of the money representing his damages for the period of time from his loss to the date of judgment." *Hansen v. Rothaus*, 107 Wn.2d 468, 473, 730 P.2d 662 (1986).

### C. No Finding That the Withholding Was Improper is Required

Weatherspoon's argument rests on the notion that the trial court was required to find that the reimbursements were improper rather than just undocumented. Weatherspoon concedes that the parties stipulated at trial that Weatherspoon asked for reimbursement from Duma Inc. for $279,290 in *undocumented* expense reimbursements. Weatherspoon argues that the parties did not stipulate nor did the trial court find that the expense reimbursements were for *improper* personal expenses. We reject Weatherspoon's contention.

Weatherspoon cites to no authority that a finding of improper withholding is required to show the money was owed to Safranski in support of an award of prejudgment interest. The trial court's lack of finding that the total stipulated amount was used for improper expenses is irrelevant:

prejudgment interest is not a penalty imposed for wrongdoing nor is its purpose to deter wrongdoing. *Hansen*, 107 Wn.2d at 475.

### D.  SAFRANSKI'S CLAIM WAS LIQUIDATED

Weatherspoon argues that Safranski's claim was not liquidated such that the trial court lacked a basis to justify the award of prejudgment interest.  We disagree.

A trial court may award prejudgment interest if the amount claimed is liquidated.  *Safeco Ins. Co. v. Woodley*, 150 Wn.2d 765, 773, 82 P.3d 660 (2004).  A claim is liquidated where the evidence furnishes data that if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion.  *Dautel v. Heritage Home Ctr.*, *Inc.*, 89 Wn. App. 148, 153, 948 P.2d 397 (1997).  "It is the character of the original claim, rather than the court's ultimate method for awarding damages, that determines whether prejudgment interest is allowable." *Spradlin*, 164 Wn. App. at 665 (citing *Prier v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 33, 442 P.2d 621 (1968)).  "That a claim is disputed does not make it unliquidated."  *Spradlin*, 164 Wn. App. at 665.

Here, Safranski claimed that Weatherspoon was improperly reimbursed for at least $350,000 in reimbursements for alleged business expenses and falsely represented that the expenses were reasonable and necessary business expenses for Duma Inc.  Weatherspoon concedes that the parties stipulated at trial that Weatherspoon asked for reimbursement from Duma Inc. for $279,290 in *undocumented* expense reimbursements.  Thus, Safranksi's claim alleged an ascertainable amount owed that Safranski would establish at trial.

This claim was liquidated because if Safranski's evidence about Weatherspoon's fraudulent business expense reimbursements was believed, it would be possible to compute the

amount with exactness, without reliance on the trial court's opinion or discretion. *Dautel*, 89 Wn. App. at 153. Because the amount claimed by Safranski was liquidated, the trial court could award prejudgment interest. *Safeco Ins. Co.*, 150 Wn.2d at 773. Thus, we hold that the trial court did not abuse its discretion by awarding prejudgment interest and the award is affirmed.

We reverse the trial court's denial of Safranski's summary dismissal motion and affirm the trial court's prejudgment interest award to Safranski.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

MAXA, A.C.J.

MELNICK, J.